Wilson, J.
I. S. Glass, a merchant in the city of Pueblo, gave a chattel mortgage upon his stock of goods to defendant Isaac Livingston his brother-in-law, purporting to secure a debt of about $2,600. It was provided in the moi’tgage that the mortgagee should take and hold possession and dispose of the mortgaged property. Contemporaneous with this, he executed two other chattel mortgages, subject however to the first, one to Othelia Glass, his wife, purporting to secure a debt of $1,000, and another to Z. Taub, his employee and clerk, to secure $1,641.20, but in each of these it was pro *322 vided that possession should remain in the mortgagor. At this time, Glass was indebted to plaintiffs and others for purchase of goods in the sum of about $5,000. The stock of goods was valued at about $7,000. By virtue of his mortgage, Livingston took possession of the whole stock of goods, and putting Taub and Mrs. Glass in charge, proceeded to sell the stock at retail. Some of the plaintiff creditors thereupon commenced suit by attachment, and took from Livingston’s possession, under attachment writs, goods to the amount of about $2,000. Some of the others commenced ordinary actions in debt for the recovery of their claims, service of summons was had upon the defendant Glass, and in all, at the time of the commencement of these proceedings, a default had been entered against Glass.
A short time after this transfer by mortgage, Glass absconded from the country, going to Europe, where he has since remained. Shortly thereafter, the plaintiff creditors, representing all of the indebtedness of Glass except about $500, commenced this action in the nature of a creditor’s bill. The com£>laint alleged that the mortgages to Mrs. Glass and Taub were void upon their face, because they purported to mortgage a stock of merchandise, and by their terms allowed the mortgagor the use and enjoyment of the same; that the Livingston mortgage was fraudulent as to these plaintiffs, because the same was given and received with intent to hinder and delay the plaintiffs in the collection of their claims, and that at the time of giving the same, Glass was not indebted to Livingston in the amount set forth therein; that the value of the property was greatly in excess of the debts secured thereby, and that since obtaining possession, Livingston had been wasting and misappropriating the proceeds ; that Livingston’s debt, if any existed, had been paid in full from the proceeds of the stock; that he refused to make any accounting as to his disposition of the stock or of its proceeds; that he was a nonresident, living in Chicago beyond the jurisdiction of the court, and had no property within the jurisdiction from which to make plaintiffs’ claims; *323 that Mrs. Glass and Taub were insolvent, and that I. S. Glass was insolvent and had absconded from the United States, and had no intention of returning. The prayer of the complaint was that the mortgages to Mrs. Glass and Taub be declared null and void; that a receiver be appointed to take charge of and possession of the property and the proceeds thereof for the purpose of paying and discharging the claims of plaintiffs and other just creditors of I. S. Glass. A temporary injunction was issued, restraining the defendants from the sale of the stock except in the ordinary course of business at retail, and of this it directed that a full account be kept and rendered. A few days thereafter, a receiver was appointed, who took possession and wound up the insolvent estate. Upon trial to the court without the aid of a jury, the findings as to facts were in favor of plaintiffs, and a decree was rendered accordingly. The case is brought here by the defendants on error for review.
The first and most serious question presented for our determination is, Can this action be maintained, it being conceded that the plaintiffs are simply contract and not judgment creditors ? In Hexter v. Clifford, 5 Colo. 170, it was held by our supreme court that the remedy provided by the code for reaching money or property of a judgment debtor in the hands of other persons was designed to be an exclusive remedy, and that a bill of equity in the nature of a creditor’s bill could not be maintained in cases where said code proceedings were applicable. The opinion in this case was handed down at the December term of court, 1879, and the next legislature, presumably in consequence of this opinion, amended the code so as to provide, as it does in its present form, “Nothing in this act shall be so construed as to prevent the bringing of an action in the nature of a creditor’s bill.” Code, section 251. It is undoubtedly true that early in the history of English and American jurisprudence, the general rule was laid down that an action in the nature of creditor’s bill could be maintained by judgment creditors only, and then only after execution had issued and there had been a return of nulla bona. *324 This was founded upon the theory and principle that a party could not appeal to a court of equity until it was first shown that he was without adequate remedy at law, or that he had exhausted such remedy and without avail. Even, however, under the operation of this general rule, it .was frequently conceded that there were many exceptions to it. Since the adoption of the code practice, by which in code states the distinctions between equity and law practice and the forms of action have been largely abolished, and since jurisdiction in both has been largely vested in the same tribunal, there has been a growing tendency in the courts, and in fact, such has been the trend of modern decisions, to greatly enlarge the number of these exceptions so as to embrace any case whose circumstances were such as to require it, in order to carry out and subserve the purpose and object of creditors’ bills, namely, to prevent the defeat of an honest creditor through fraud. In fact, some of the decisions have gone almost to the extent of claiming that the old rule is entirely abrogated, and we must confess that the reasoning of these opinions strikes us .with much force. In a late ease decided by the supreme court of North Carolina, Chief Justice Smith, speaking for the court, discussed this question, and said: “ When, under our former system, the law was administered by two separate and distinct tribunals, of which each had its own rules of practice, the court of equity would lend its aid to a creditor in enforcing a legal demand, when he had none or an inadequate remedy at law. Hence it became an established doctrine in that court, to refuse its assistance, unless the creditor had ascertained the amount of his debt by reducing it to judgment, and sued out execution, when the property of the debtor pursued, could be seized and sold thereunder, as in case of a fraudulent and ineffective assignment, in order that a lien might attach, although this was not required, when the estate and interest to be appropriated was purely equitable, or such as was not accessible to legal process, and in both cases it must be shown (and commonly this was done by the return of nulla bona to the execution) that the debtor had no *325 property from which, the debt could be satisfied by such legal process. * * * It is obvious, that as this rule grew out of the relations of the two courts under the former system, one acting in aid of the other, and was essential to the harmony of their action in the exercise of their separate functions in the administration of the law, so it must of necessity cease to have any force, when the powers of both, and the functions of each, are committed to a single tribunal, substituted in place of both. Why should a plaintiff be compelled to sue for and recover his debt, and then to bring a new action to enforce payment out of his debtor’s property in the very court that ordered the judgment ? Why should not full relief be had in one action, when the same court is to be called on to afford it in the second ? The policy of the new practice, and one of its best features, is to furnish a complete and final remedy for an aggrieved party in a single court, and without needless delay or expense.” Bank v. Harris, 84 N. C. 210. This view is substantially supported also by the supreme court of Washington. Benham v. Ham, 5 Wash. 128.
It is not necessary for us to discuss or determine to what extent, if any, the rule has been abrogated in this jurisdiction. This case comes in our opinion clearly within the reason of the exceptions allowed to the rule, even by those courts which adhere to the old rule. It was early recognized as an exception that such a bill could be maintained where the debt was due by an insolvent estate, or where the debtor’ had absconded from the state. Kipper et al. v. Glancey et al., 2 Blackford, 356; Bank v. Paine, 13 R. I. 592; Steere et al. v. Hoagland et al., 39 Ill. 264.
All of these decisions rest upon the ground that the circumstances were such that the securing of judgment and issuance of execution would be of no avail, and that therefore the reason for the rule having ceased, the rule itself ceased. It has also been frequently held that attaching creditors having a specific lien by virtue of an attachment levy, could before judgment maintain a creditor’s suit against an insolvent debtor to set aside a fraudulent transfer. The *326 numerous authorities on this question are collated and ably discussed by Mr. Pomeroy in a lengthy note to the case of Massey v. Gorton, in 90 American Decisions, p. 288.
The earliest case reported in Colorado in which this question was considered is Burdsall v. Waggoner et al., 4 Colo. 256. It was there said by our supreme court that to entitle a complainant to maintain a bill in the nature of a creditor’s bill, he is usually required to show not only a judgment obtained, but an execution sued out with the return of nulla bona, or that the writ is unsatisfied in whole or in part. To this general rule, however, the court expressly said that there were some exceptions, and in support of this proposition cited Steere v. Hoagland, supra. In Neuman v. Dreifurst, 9 Colo. 233, it is true that the supreme court said: “ A further objection to the complaint lies in the fact that it seeks to set aside the conveyance by the defendant ISTeuman to the defendant Schueler. In this respect the complaint is in the nature of a creditor’s bill, which cannot be maintained before judgment.” This case involved an alleged fraudulent conveyance of real estate, and without discussing the difference between that and the case at bar, which involves only a transfer of personal property, it is sufficient to say that the court as authority for its proposition cited Burdsall v. Waggoner, supra, and it is therefore to be conclusively presumed that it affirmed the doctrine there announced, to wit, that whilst this was the general rule, there were exceptions to it. The same maybe said of Hood v. Saunders, 11 Colo. 108. We conclude therefore that it is fully settled as the law of this state, that even if this general rule is in force in its entiretj-, it is subject to the exceptions which have been heretofore recognized. The rule as it exists with tire exceptions and the reasons in support of it and them, are clearly laid down by our highest judicial authority, the supreme court of the United States, in Case v. Beauregard, 101 U. S. 690. “But, after all, the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means *327 of proof. The necessity of resort to a court of equity may be made otherwise to appear. Accordingly the rule though general, is not without many exceptions. Neither law nor equity requires a meaningless form, ‘ Bona sed impossibilia non coyit lex.’ It has been decided that where it appears by the bill that the debtor is insolvent, and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference. Turner v. Adams, 46 Mo. 95; Postlewait Cregan and Keeler v. Howes, 3 Iowa, 365; Ticonie Bank v. Harvey, 16 Iowa, 141; Botsford v. Beers, 11 Conn. 369; Payne v. Sheldon, 63 Barb. (N. Y.) 169. This is certainly true where the creditor has a lien or trust in his favor.
“ So it has been held that a creditor, without having first obtained a judgment at law, may come into a court of equity to set aside fraudulent conveyances of his debtor, made for the purpose of hindering and delaying creditors, and to subject the property to the payment of the debt due him. Thurmond and Others v. Reese, 3 Ga. 449; Cornell v. Radway, 22 Wis. 260; Sanderson v. Stockdale, 11 Md. 563.
“In Brisay v. Hogan, (53 Me. 554), it was ruled that when a creditor seeks by his bill to obtain payment of Ms debt from land paid for by the debtor, but conveyed to his wife, a levy of an execution is unnecessary, if the debtor never had legal title to the land. See also Day et al. v. Washburne, 24 How. 352.
“ The foundation upon which these and many other similar cases rest is that judgments and fruitless executions are not necessary to show that the creditor has no adequate legal remedy. When the debtor’s estate is a mere equitable one, which cannot be reached by any proceeding at law, there is no reason for requiring attempts to reach it by legal processes.”
The case at bar comes clearly within the reason of the rule there announced. It is evident that a judgment and execution in favor of the plaintiffs herein would have been fruitless, and would have been a useless and unnecessary expense to have entailed upon the estate of the insolvent debtor if the claims had been collected from such estate, and upon the *328 creditors if they had not. We think neither was necessary in order to prove the claims of plaintiffs, because the indebtedness to them was admitted, and besides according to the allegations of the complaint which the court found to be true, the defendants were fraudulently wasting the estate, so that it would have been probably entirely dissipated before even those creditors who had instituted suit arid secured service upon the debtor before he had absconded, could have secured final judgment and issuance of an execution. Those creditors who had not secured service before the debtor absconded would have been remediless. The validity of the claims of those creditors upon which suit had been instituted against the debtor had been, so far as he was concerned, as fully established and proven by the entry of his default as if final judgment had been entered. To all intents and purposes therefore, the object of the rule requiring judgment to be first had before a creditor’s bill could be maintained had been attained as to them. Issuance of execution and return of nulla Iona could not have accomplished nor shown anything further than was done by the allegations of the bill and by the proofs, to entitle the creditors to the aid which they sought in a court of equity. We think, therefore, that upon principal, reason and authority, under the circumstances of this case, this action was proper, and could be maintained.
Defendants insist, however, that in no event was the court justified in granting an injunction and appointing a receiver. Code, section 163, after specifying two instances in which it is proper to appoint a receiver, provides also, thirdly, that an appointment maybe made “in such other cases as are in accordance with the'practice of courts of equity jurisdiction.” It follows, therefore, it being held that this equitable proceeding could be maintained, that the court had jurisdiction to appoint a receiver. Indeed, it is very generally held that where equity will sustain a creditor’s bill, it will also grant the aid of the ancillary remedies of injunction and receiver. Cohen v. Meyers, 42 Ga. 46 ; Beach on Receivers, §621; 1 Cobbey, Chattel Mortgages, § 490; Haggarty v. Pitman, 1 *329 Paige, 298; Londock Co. v. Mallory, 12 N. J. Eq. 431; Rosenberg v. Moore, 11 Md. 376; Hammond v. Solliday, 8 Colo. 610. In this last cited case, the validity of the chattel mortgage was not questioned, and the court held that ordinarily in such case a receiver could not interfere with the mortgagee’s control when fortified by possession, unless he discharged the debt secured by the mortgage, hut the court recognized that he might be authorized to do so even in such case, where urgent necessity was shown growing out of the insolvency or clear misconduct of the mortgagee, which jeopardized the interests of those for whose benefit the receiver acted. In many well considered cases it has been held that the appointment of a receiver upon a creditor’s bill is a usual practice, and is almost a matter of course where the object of the hill is to reach personal assets. Wait on Fraudulent Conveyances and Creditors’ Bills, § 184, et seq.; Bloodgood v. Clark, 4 Paige, 577. It is true that Mr. High lays down as a general rule, which he claims to be supported by the weight of authority, that a receiver will not be appointed in aid of mere general creditors, whose rights rest only in contract and are not yet reduced to judgment, and who have acquired no lien upon the property of the debtor, but he concedes it to have been held that there are some exceptions to this rule. One exception which he mentions is upon principle and reason on all fours with this case. It is that in the ease of an indebtedness due from a copartnership, when the insolvency of the firm and of its individual members is conceded and the indebtedness is admitted to be justly due, the creditors, before their demands have been reduced to judgment may have an injunction and a receiver, as against the partners and third persons to whom they have attempted to convey their property for the purpose of hindering and delaying their creditors. High on Receivers, §§ 406-407. We think the better and safer rule is that in all cases where a court of equity entertains jurisdiction of a creditor’s bill, it has the authority to exercise all of the powers vested in it for the purpose of effectuating the objects of the proceeding. To hold otherwise would he sub *330 versive of the doctrine and principle upon which equity jurisprudence is founded.
As to the fraudulent acts and intention of Glass, and the participation by defendants in the fraud intentionally, to aid Glass in defeating his other creditors, and not merely to secure their own claims, these were questions of fact which were found by the court in favor of the plaintiffs. In such case under the well settled rule, such findings would not be disturbed by this court unless manifestly against the weight of the evidence. Such is not the case, but on the contrary, they are strongly supported by the proofs. It is possible that in the course of the trial, the court may have admitted, over the objections of defendants, some evidence which was not strictly competent. There was sufficient competent evidence however to sustain the findings, and in such case it will he presumed that the trial court based its findings upon this, and not upon the incompetent evidence. In any event, the evidence being sufficient to sustain them, the defendants were not prejudiced.
There were a few other questions raised, and very briefly alluded to in the briefs of counsel, but we deem it unnecessary to discuss them. The questions which we have considered and determined were the most material ones, and being decisive of the case according to pur views, we deem it unnecessary to further extend this opinion. The decree was proper, and it will be affirmed.

Affirmed.