## [No. 1761.]

### GLASS ET AL. v. SCOTT ET AL.

1. EVIDENCE—DEPOSITIONS—WAIVER OF OBJECTIONS.

In an action contesting the probate of a will, an objection to depositions that a copy of the will, and not the original, was attached to the dedimus is expressly waived by a stipulation that the will did accompany the dedimus.

2. EVIDENCE—REVOCATION OF WILL—DECLARATIONS—RES GESTÆ.

Under all statutes regulating the revocation of wills by acts other than instruments executed for the purpose with a solemnity equivalent to that required for the execution of the original document, the declarations of the deceased made at the time are admissible as part of the *res gestæ* to show the intent with which the act, relied upon as a revocation, was done, but declarations made by deceased long after the act are not admissible to show its intent.

3. PRACTICE — ADMISSION OF INCOMPETENT EVIDENCE — HARMLESS ERROR.

In a trial to the court, the admission of incompetent evidence is not reversible error where the competent evidence was sufficient to support the judgment, and under the competent evidence introduced the judgment was right. ·It will be assumed that the judge decided the case on the evidence properly admitted.

4. WILLS—REVOCATION.

Under the Colorado statutes, 2 Mills' Ann. Stats. sec. 4655, providing

how wills may be revoked, where a testator drew pen marks through her signature to a will, at same time calling upon persons present to witness that she destroyed the will, stating that she thereby revoked the will, it was such obliteration in contemplation of the statute as would amount to a revocation although the name was still legible.

*Appeal from the District Court of Boulder County.*

Mr. O. F. A. GREENE and Mr. E. H. ADDISON, for appellants.

Mr. CHAS. M. CAMPBELL, for appellees.

BISSELL, P. J.

While the statute of frauds, 29 Car. 2, is the cornerstone of the structure built up by the decisions of the judges construing this statute which determines the formalities which must be observed in the revocation of a will, otherwise than by a written instrument regularly executed in conformity to the legal or statutory requirements, the centuries have only sufficed to produce a surprisingly small number of interpretations. Almost a shelf would contain the volumes wherein the English and the American decisions are to be found. The latter very exactly follow the parent cases, for in almost all the states the statutes regulating the matter follow the language of the original law, save where, as in the later statute of Victoria, further restrictions have been put on the power, or where wise legislators, forgetting that a thoroughly well interpreted statute is least liable to misconstruction, have attempted to secure greater accuracy by eliminating some terms or adding others, in their folly imagining the emendations would make the law more definite and certain. The old statutes and most of the modern ones permitted a will to be revoked otherwise than by proper writing only by "burning, tearing, cancelling or obliterating, or otherwise destroying" the document. The words used in the Colorado

statute are "burning, tearing or obliterating." General Statutes, 1883, sec. 3434. For the first time either under the territorial or state organization, we are called on to interpret these words, and to determine whether what the alleged testatrix is proven to have done revoked the instrument under consideration.

On the 24th day of June, 1889, Mary Glass then having several children and grandchildren executed the instrument produced as her last will and testament. The devisees are unimportant for the will is not attacked because of illegality in form or irregularity of execution. Proper proof by the subscribing witnesses was duly presented and the instrument offered for probate. This was refused in the county court and the action confirmed on appeal in the district court, both courts concluding the will had been revoked. The character and the circumstances of the revocation will be stated and the nature of it exhibited in print as nearly as may be, that the acts which we shall hold constitute under the statute an absolute revocation, when supported by the proof of intention which was produced, may be fully apprehended and that there may be no opportunity for misapprehension respecting our views of the law. We shall refer only to the testimony of two witnesses, Nancy and Maggie Mettlen. These were granddaughters of the testatrix living at the time of the alleged act in Fremont, Nebraska. In 1894, Mrs. Glass was at their home in Nebraska and there at that date, in their presence and in the presence of their mother, stated that she wished them to witness that she destroyed the will. According to these witnesses she then took a pen and through her name, Mary Glass, drew a straight line parallel with the signature, and then through each of the two words constituting the name, drew two other lines at an obtuse angle to each word. The name then stood M̸a̸r̸y̸ G̸l̸a̸s̸s̸. The testatrix gave as a reason that her daughters Nancy and Hasseltine had treated her unkindly and she wanted to keep the paper to show them what she had intended to do if they had treated her properly. According to one of the witnesses she

stated that she thereby revoked the will and made it of no effect, and further that she desired to revoke it and permit her property to descend by law unto her heirs. She deemed it unnecessary to burn or destroy the will for the purposes of revocation, but desired to show her children, Nancy and Hasseltine, that at one time she had made a will in their behalf but because of their neglect and ill treatment, she had seen fit to revoke it and make it of no effect. This was all the evidence produced showing an intention to revoke at the time of the act, and the only acts showing a revocation under the statute. There was other evidence offered by two witnesses who gave testimony respecting her subsequent declarations concerning the will and its revocation. This evidence was objected to by counsel for the proponents and appellants, but was nevertheless received and exception saved. We should perhaps further note that there is a suggestion in the arguments of counsel that the original will did not accompany the dedimus whereunder the testimony of some of the witnesses was taken, though a copy accompanied it and thereon and thereunder the witnesses were permitted to testify on the hypothesis that the copy produced was the equivalent of the original and they gave their testimony accordingly.

On the appeal several questions are presented. Recurring to the one last suggested we dispose of it by the simple suggestion that the objection of counsel that the will did not accompany the dedimus was expressly waived. It was declared by stipulation that the will did accompany the dedimus on each occasion and that the witnesses testified with the will before them. While probably this is not literally the fact, the stipulation operates as a waiver of the objection and the copy was probably sent for the purposes of convenience, it being literally an exact copy, and the witnesses were permitted to testify with regard to the copy as though it had been the original document and their evidence is as exact and certain with reference to all disputed questions as though the will had been exhibited. Regarding the matter as en-

tirely disposed of by the stipulation we dismiss it from further consideration.

Under all statutes regulating the revocation of wills by acts other than instruments executed for the purpose with a solemnity equivalent to that required by the law in the execution of the original document, the declarations of the deceased are always admitted on a question of revocation to establish the *animo revocandi ;* in other words, the intent with which the act was done which is relied on to show the revocation is always a proper subject of proof. In many of the cases wherein the question of a revocation was under consideration evidence of this description has been offered and the courts have been frequently called on to decide whether they were admissible for this purpose, and the established rule respecting the matter is that all declarations which accompany the act may be given in evidence. They are received as part of the *res gestæ*, and as tending to show the intent of the act and the purpose for which it was done. Possibly there may be some decisions to the contrary and one or two I have observed which seem to be directly in point, but whether they are directed to the proposition or indirectly sustain the action of the court in rejecting the evidence, it may in each case be said they are opposed to the current of authority and are against the principle on which such declarations are admitted. In the view which we take of the character of this objection and its inconsequence in the determination of the appeal a further discussion of the proposition is wholly unnecessary. *Waterman v. Whitney*, 11 N. Y. 157; *Runklee et al. v. Gates et al.*, 11 Ind. 95; 1 Redfield on Wills, p. *331. The court undoubtedly erred in admitting the declarations of the testatrix which were made in Boulder long after the will had been revoked, whether the testimony was received in order to support the act as an act of revocation, or for the purpose of supplementing the proof of the intent which was adequately sustained by the evidence of the two Mettlen girls who were present when the act was done. Though this be conceded, we do not conceive the

judgment ought therefore to be reversed because the judgment is right on the other testimony, and no other judgment could be entered on the proof than one refusing the probate of the will. The case was tried to the court and we may, under the general rule, very properly assume the case was decided on the testimony properly admitted, it being adequate to sustain the decision, and in the final consideration the judge may have excluded from his consideration this incompetent testimony which was improperly received. Under these circumstances the statute does not permit us to overturn the judgment.

We are now brought directly to the main proposition whether the act coupled with this proof of intent was an act of revocation within the proper definition of the terms employed in our statute. Of this we have no doubt. There are many cases which at first blush appear to hold a contrary view, but when analyzed and closely examined, it will be discovered the statutes under which they were rendered were wholly different from the original statute of frauds and totally variant from our own. In so far as we have been able to discover cases directly adjudicating the point, we find well considered decisions of very eminent courts in full accord with our conclusions. We shall cite the various cases to which we have been referred, and which we have found in our own investigation that the opinion may serve to exhibit what we believe are the controlling authorities and are certainly those which have influenced and concluded our judgment. A leading case of a very distinguished tribunal, which we are always glad to follow, contains the opinions of the lord chancellor of England and many of the distinguished jurists who delivered opinions before the house of lords in a case involving the construction of the act of Car. 2 as late as 1878. The only opportunity for debate under this long line of authorities depends on the possibility of giving the words "cancellation and obliteration" different and distinct meanings. We are justified in concluding that neither justify nor permit different definitions, both in view of what lexicographers have

written on the subject and in view of the decision of distinguished courts on the same proposition. Neither our statute nor that of Charles, nor any other statute of any state to which our attention has been directed, attempts to declare what shall amount to cancellation or what shall amount to obliteration. The words are not technical and the legislatures must be presumed to have used them in their ordinary sense and according to their ordinary signification. It serves no useful purpose and adds nothing to the strength of the argument to enter into a discussion respecting the derivation and original signification of the words or of the Latin words from which they were constructed, whereby the result has been incorporated into our language. Long before the statutes or any of them were passed, these words had passed into common use and had acquired an accepted signification which has continued to the present. An obliteration or a cancellation would be either one or the other, and effective as such if done with an intent to destroy an instrument and render it ineffectual for the purposes for which it was originally put into circulation. It has been adjudged that this cancellation or obliteration may be effected by words written across the instrument as " obliterated " or " canceled." The end may be equally well accomplished by any erasure which shall be partial or complete. It may be done by drawing the pen through the words. Any act of this sort is effectual for the reason that it puts the instrument into a condition whereby its invalidity appears on its face the moment it is produced. All the acts which the statute specifies as permissible for the purposes of revocation are done to the will itself, to the instrument produced, to the paper offered. When it comes to the burning, it is wholly unnecessary that the entire paper should be destroyed and a very slight burning which casts doubt on the validity of the instrument, when accompanied by proof of the intention, is enough. If it is attempted to destroy the will by tearing, this may be done, though the will be not so torn to pieces as to be in the full definition of the term absolutely destroyed. A slight tearing is enough, though it

extend to only a part or portion of the instrument. It has also been adjudged that where a will has been executed under seal, though a seal be unnecessary to its formality, the tearing off of the seal is a tearing within the meaning of the statute and effective as an act of revocation. As has been adjudged in a thoroughly argued and well-considered case, the statutory obliteration does not necessarily require the absolute erasure of the words nor necessitate a scratching or blotting out, so that they shall be illegible and cannot be read whether with or without a glass, though perhaps there may be cases to the contrary. These various decisions show that the obliteration which the statute requires is something which shall be operative to demonstrate the invalidity of the document when it is produced in evidence. We now come to the direct question whether a line drawn through a signature, as was done in the present case, accompanied by two lines drawn through each part of the name, is, under this term an obliteration and whether it is a revocation of the will. We are not without direct decisions on the point. There are two cases cited below, one from Pennsylvania, and one from the house of lords directly passing on the proposition. The Pennsylvania case directly says, " A line drawn through the writing is, doubtless, obliteration, though it may leave it as legible as it was before." In the house of lords, the case decided in 1878, and argued on one side by Judah P. Benjamin, who was well known in this country as an able lawyer, and by Wills and Mellor on the other side, is a direct and positive construction of the act of Charles II. It is a curious circumstance that so late as 1878, and after the passage of the Victorian act, which modified the original enactment, and was much more strict in its requirements regarding the destruction of a will, the original statute of frauds should have come under consideration. In that case some fifty years after the probate of the will and the entry upon the estate thereby granted, ejectment was brought by the heir at law of the devisee to recover certain property devised by the will. The case turned on an alteration in the will. As originally drawn there was a devise

to Elizabeth Ely, in the language of the instrument, "to hold unto her, the said Elizabeth Ely, her heirs and assigns forever." The words "Ely, her heirs and assigns forever" had been struck through with a pen. The obliteration was more extensive than intended, and the word "Ely" was reintroduced and the gift then read, "to hold to my said mother Elizabeth Ely," the other words continuing obliterated. Evidently the question was whether Elizabeth Ely took an estate for life or an estate in fee which would depend on the inquiry whether the words "her heirs and assigns forever" were or were not a part of the devise. As we have stated the proposition, the obliteration or cancellation was almost identical with that in the case at bar, save that it lacked the upright strokes through each word of the name which gave force and effect and more evidently expressed an intention to obliterate, if possible, than would the straight line alone. On full consideration, after argument by Lord Cairns, Lord Penzance and Lord O'Hagan, it was adjudged the words were obliterated within the proper meaning of the statute Car. 2, and Elizabeth Ely took only a life estate and the decree appealed from was duly affirmed. We regard the case of great significance for two reasons: in the first place this was the only evidence of a revocation of this clause of the will; in the second place both the eminent council who argued the case at the bar, and the lord chancellor and his associates who argued it before the house of lords, each and all without exception and without variation use and use only the word "obliteration" when speaking of the erasure of those words. Manifestly those very eminent chancellors and those very eminent counsel made no mistake in the use of the word "obliteration" and we may be right sure had there been any question regarding the propriety of the use of that term, neither the council nor the chancellors discussing the case before the house of lords would have failed to use another word if that had been improperly adapted to the purposes of the argument or to the purposes of the decision. As we look at the case it is a direct adjudication of the proposition under consideration

and to our minds it is both persuasive and conclusive. *Swinton v. Bailey*, 4 Law Rep. App. Cas. 70; *Evans's Appeal*, 58 Pa. St. 238; *Stevens v. Taprell*, 2 Curteis's Ec. Rep. 458; *Woodfill v. Patton*, 76 Ind. 575. *Vide* also *Cheese v. Lovejoy*, 2 L. R. Prob. Div. 251, *Reed v. Harris*, 33 Eng. Com. Law, 129, 6 Ad. & El. 208, *Will of Mary P. Ladd*, 60 Wis. 187, *Price v. Powell*, 3 Hurl. & Norm. 340, *Warner v. Warner's Est.*, 37 Vt. 356, *Jackson v. Holloway*, 7 Johns. 393, and *Gay v. Gay*, 60 Ia. 415.

Since we regard the errors which the court committed in permitting the introduction of testimony immaterial and insufficient to reverse the judgment, and we adjudge that the acts done by Mary Glass in her lifetime in the obliteration of her signature was a revocation of her will under the statute, we conclude the judgment of the court below refusing to probate the will correct, and it will therefore be affirmed.

*Affirmed.*