[No. 4185.]

KILHAM ET AL. v. THE WESTERN BANK AND SAFE DEPOSIT COMPANY.

30  365
33  471

1. **Equity Proceedings—Evidence—Appellate Practice.**

In an equity proceeding assignments of error based on the alleged admission of illegal evidence will not be considered where there is sufficient unobjectionable evidence to sustain the decree.

**2. Pleading—Amendment—Change of Cause of Action.**

In an action by a judgment creditor to subject to the satisfaction of the judgment, land standing on the record in the name of the father of the judgment debtor, where the complaint alleged a resulting trust in the father for the benefit of the son by reason of the son having paid the purchase price therefor, an amended complaint to correspond with the proof which alleged an express trust did not state a new and different cause of action.

**3. Judgments—Pleading—Jurisdiction.**

In an action upon a judgment it is unnecessary to allege facts to show that the court had jurisdiction to render the judgment. If the court had no jurisdiction that fact should be raised by defendant's answer.

**4. Attachment—Real Estate in Another's Name—Notice.**

Where real estate was attached the title to which stood on the record in another name than that of the attachment defendant, the fact that notice of the attachment was served on the person in whose name the property stood, the day before the attachment writ was filed would not invalidate the attachment.

**5. Same.**

Where notice of an attachment of real estate standing on the record in another name than that of defendant, was served on an agent as the agent of the heirs and legatees of the person in whose name the title stood, an objection on the ground that no estate involved descended to heirs or legatees, but passed by will to devisees, is without merit where the defendant's rights were in no way prejudiced by overruling the objection.

**6. Evidence—Trusts—Creditor's Bill.**

Evidence examined and held sufficient to support a finding that the land in controversy was held by a father in trust for his son and to sustain a decree subjecting the land to the debts of the son.

*Error to the District Court of Logan County.*

Mr. CHAS. H. TOLL and Mr. WM. R. BARBOUR, for plaintiffs in error.

Mr. R. D. THOMPSON, for defendant in error.

Mr. JUSTICE STEELE delivered the opinion of the court.

The Western Bank and Safe Deposit Company, in a suit brought against Fred C. Kilham, attached certain real estate situated in Logan county and standing in the name of L. C. Kilham. Judgment was subsequently rendered against Fred C. Kilham, the attachment sustained, and the judgment ordered to be satisfied (the defendant being a nonresident) out of the attached property. Subsequently, and on August 11, 1898, the bank commenced its action in the district court against the plaintiffs in error. In the complaint it is set forth in general terms that the judgment was rendered against Fred C. Kilham and the attachment sustained, as above stated, and that although the title to a one-half interest in and to the property attached stood at the time of his death in the name of Leonard C. Kilham, that the said Leonard C. Kilham did not own the said one-half interest, but that one-half of said one-half interest was held in trust for the benefit and use of the said Fred C. Kilham, the said Fred C. Kilham having paid the purchase price for said one-quarter interest, and that the said Fred C. Kilham was in fact and truth the owner of said one-quarter interest so held in trust, and that such trusteeship and the interest of said Fred C. Kilham does not appear of record in said Logan county. The said L. C. Kilham had no interest in and to said quarter interest in said real estate other than as a mere trustee for said Fred C. Kilham. That L. C. Kilham died testate in April, 1897, leaving as his sole heirs at law Lizzie C. Kilham, his widow, and the said Fred C. Kilham, his son. That by the will of said L. C. Kilham, the undivided one-half of his property (except a few small bequests) is devised to Lizzie C. Kilham, and an undivided one-half thereof to Edward H. Ryan as trustee for the said Fred C. Kilham. That the said Fred C. Kilham has no other property in Colorado; that he is

wholly insolvent; that a cloud is cast upon the title of said Fred C. Kilham. And praying that said Fred C. Kilham be declared to be the owner of an undivided one-quarter interest in said property, that the attachment levy be declared to be a lien upon the undivided one-quarter interest of the said Fred C. Kilham, and that the defendants Lizzie C. Kilham and Edward H. Ryan be declared to have no right, title or interest in and to said one-quarter interest of said Fred C. Kilham.

The defendants filed separate answers. The answer of Fred C. Kilham denies knowledge or information concerning the attachment and judgment set forth in the complaint; alleges that he has no interest in the land described in the complaint, and denies that he paid the purchase price or any part thereof; and alleges that Leonard C. Kilham was at the time of his death the legal and equitable owner of an undivided one-half thereof, that the said property was not held in trust for him by his father, and that he has no interest in the said property except as a devisee.

The cause was tried January 26, 1899. At the close of the testimony, plaintiff was granted leave, over the objection of the defendants, to amend its complaint. The amendment strikes from the complaint the allegation that an undivided one-quarter interest in the land was held in trust by the said L. C. Kilham for the use and benefit of the said Fred C. Kilham, the said Fred C. Kilham having paid the purchase price thereof; and substitutes paragraphs in substance alleging that on June 29, 1887, the said Leonard C. Kilham, for a good and valuable consideration, declared by an instrument in writing duly signed that he had sold and assigned an equal, undivided one-eighth interest in said land and certain contracts of purchase; and that the said Fred C. Kilham owned a one-eighth interest in said land and

land contracts, and that on November 11, 1890, said Leonard C. Kilham gave the said Fred C. Kilham an additional one-eighth interest in and to all of said property and declared such additional interest by indorsement upon said instrument in writing, and that the same was duly delivered to the said Fred C. Kilham; that the said Leonard C. Kilham, from and after June 29, 1887, up to November 11, 1890, held the title in and to a one-eight interest in said land and land contracts in trust for said F. C. Kilham, and that from November 11, 1890, until his death, in 1897, the said Leonard C. Kilham held the title in and to a one-quarter interest in said land and land contracts and land obtained under said contracts in trust for said F. C. Kilham; that from and after November 11, 1890, the said Fred C. Kilham contributed one-fourth of all monies required for use in paying the taxes on said lands and the annual installments payable on said land contracts, and other expenses incurred in maintaining said property until the year 1895, when, because of lack of necessary funds, he was unable to make further contributions or payments; that at the time of the death of said Leonard C. Kilham, the said Fred C. Kilham was in fact and in truth the owner of such undivided one-quarter interest in said land held in trust for him.

A motion to strike the amendment was interposed upon the ground, among others, that the amendment changed the cause of action attempted to be stated in the original complaint. The motion having been denied and the objection to the amendment being overruled, the defendant filed an answer admitting the execution of an instrument in writing such as described in the complaint, but denied that there was any consideration for it; denied that any

property was sold or transferred thereby, and denied that said instrument was ever delivered.

Upon the trial, defendant objected to any testimony being received, upon the ground that the complaint did not state a cause of action; and the objection was overruled. The will of Leonard C. Kilham was admitted in evidence over the objection of the defendant. Plaintiff's witnesses were permitted to testify from the books of the plaintiff, and the books of accounts were admitted in evidence. The witness Johnson was permitted to testify, over the objection of the defendant, to conversations with Leonard C. Kilham.

The judgment was for plaintiff. The decree adjudging the defendant Fred C. Kilham to be the owner of the land described in the complaint, and declaring that the plaintiff had a valid and subsisting lien upon the premises under and by virtue of the attachment proceedings. The case comes here by writ of error. The assignments of error will be considered in the course of the opinion.

We shall not consider the assignments of error which relate to the reception of testimony because we are of the opinion that there is sufficient unobjectionable evidence to sustain the judgment; the documentary evidence and the testimony of the defendant will uphold the decree.

The objection to any testimony upon the ground that the complaint did not state a cause of action was properly overruled. Both the original and the amended complaint stated a cause of action, and we are of opinion that the court did not err in permitting the complaint to be amended to correspond with the proof, as provided by the code.

The objection that the amendment states another cause of action was properly overruled. No new cause of action is stated. The original com-

plaint charges that the land is held in trust for F. C. Kilham, and alleges that the trust created is that implied from the payment of the purchase price. Upon the trial it was shown that the said L. C. Kilham had by writing declared a trust in favor of his son, F. C. Kilham, and there is not a change of the cause of action, although in the original complaint a resulting trust was pleaded, while in the amended complaint an express trust was alleged. The suit was brought to remove a cloud from the title of the defendant in the attachment suit. In both complaints the theory upon which the plaintiff seeks to recover is that the property is held in trust by L. C. Kilham for the use and benefit of his son, F. C. Kilham.

Judge Belford, speaking for this court in *Logan v. Clough,* 2 Colo., 323, said: "When it is averred that the property was held in trust for the plaintiff under the act of congress, and that by virtue of such act the deed of conveyance was made, I apprehend that that averment notified the defendant that the plaintiff was claiming as a beneficiary of such trust. Nor am I aware of any rule which requires the pleader to state in his bill every fact which makes up the trust. The trust once alleged, the method of establishing it belongs to the domain of evidence."

It is urged that the complaint in the cause does not show the jurisdictional facts necessary to the rendition of the judgment and the sustaining of the attachment in the original suit; that it does not appear that the action was brought upon a contract debt, or that the affidavit stated the nature of the indebtedness, or that there was a valid levy, or any return of the writ, or a valid or proper service by publication, or that the service by publication was regular, or that there is any proper return of the writ, or that the affidavit for publication gave the postoffice address of the defendant or stated that it was unknown,

or that summons was mailed to his postoffice address; that the complaint shows that the order for publication was published, and not the summons; that it does not appear in the complaint that the paper in which the publication was made was a public newspaper.

The court overruled these objections, and the ruling of the court is assigned for error. The objections should have been overruled. In an action upon a judgment it is unnecessary to show by averment the jurisdiction of the court.

"It is an elementary rule that the jurisdiction of courts of general jurisdiction is to be presumed, and it follows that the judgments and decrees of such courts are, in all cases, of at least *prima facie* validity. In asserting such a judgment or decree as a cause of action, or as a ground of defense the pleader need state no jurisdictional facts. 'It was long ago settled that, in pleading a judgment, it is unnecessary to show by averment that the court had jurisdiction.' * * * If the court had no jurisdiction, that fact should be raised by defendant's plea." *Bruckman v. Taussig,* 7 Colo., 561.

A copy of the writ of attachment and a copy of the notice served upon the agent for the heirs and legatees of L. C. Kilham is set out in the complaint. It appears that the writ was filed with the clerk and recorder on the 10th of March, 1898, and that the notice was served on the 9th of March. Counsel say that the notice having been served before the writ was filed, the notice was untrue and entirely ineffectual. The code requires notice to be served upon the owners of property before the levy is made. The purpose is to notify them that the property has been levied upon, and the mere fact that the notice was served the day preceding the levy will not defeat the levy.

The notice was served upon Johnson as agent for the heirs and legatees of Kilham. The objection is that no estate involved descended to heirs or legatees, because real property passes by will to devisees. The objection is not meritorious; the notice served its purpose, and the defendants were not prejudiced nor have their rights been infringed by the overruling of the objection.

The only question remaining for our consideration is that presented in the assignment which states that the evidence is insufficient to justify the finding and judgment.

The evidence shows that on June 27, 1887, L. C. Kilham and C. W. Johnson entered into a contract in writing with H. E. Tedmon and B. S. Tedmon for the sale by them to the Tedmons of an equal one-fourth interest in and to all horses, cattle, livestock, ranch tools and implements, and certain land contracts. Upon this instrument is an assignment in the handwriting of L. C. Kilham, and signed by him, dated June 29, 1887, in which the said L. C. Kilham recites that, for value received, he has sold and assigned to Fred C. Kilham an undivided one-eighth interest in the land contracts aforesaid and in 320 acres of deeded land, and an equal undivided one-eighth interest in all livestock, cattle, horses, harness, saddles, wagons, ranch tools and implements, "and all other personal property upon our ranch in Logan county, Colorado, a three-fourths interest in which was sold by Tedmon to Kilham & Johnson on the 27th day of June, 1887." And upon this instrument, in the same handwriting, appears these words: "The interests in the two ranches and in the livestock and personal property on them stand, at this date, as follows, to wit: L. C. Kilham, two-eighths; Fred C. Kilham, one-eighth; C. W. Johnson, three-eighths; B. S. Tedmon, two-eighths, June

29th, 1887." Across the face of that part of the instrument on which the assignment to Fred C. Kilham is written, these words and figures in the handwriting of Leonard C. Kilham appear: "November 11th, 1890, this assignment cancelled and new assignment made of a one-quarter interest. L. C. K." This document was produced at the trial by Johnson, mentioned in the contract, who stated that it was found by him in a tin box containing papers relating to the affairs of Kilham & Johnson, that the box was kept at The Western Bank and Safe Deposit Company, and that the said Fred C. Kilham had access at all times to the said box and had a key thereto.

The books of the bank showed the accounts of Kilham & Johnson, of L. C. Kilham, and Fred C. Kilham. Deposit slips and checks in the handwriting of Fred C. Kilham were offered in evidence.

Exhibit C, in the handwriting of L. C. Kilham, is a statment that certain dividends were on deposit in bank to the credit of Kilham & Son and others. The witness Johnson testified that the dividends so paid were from the sale of certain cattle and livestock upon the ranch in question. The amount of dividend received by Kilham & Son was $1,500. The witnesses Blakeney and Duncan, book-keepers of The Western Bank, testified from the books of the bank and from checks and deposit slips that when on the date of certain deposit slips deposits were made to the credit of Kilham & Johnson, that of the total deposit Johnson contributed one-fourth, Kilham & Son one-fourth, and F. C. Kilham one-fourth. That certain deposit slips in the handwriting of F. C. Kilham showed that Fred C. Kilham contributed funds to the account of Kilham & Son.

Johnson testified that certain checks drawn upon

the Kilham & Johnson account were in the handwriting of Fred C. Kilham, and were for the purchase price, in one instance, and for the installments due upon the land contracts, and for taxes and expenses of the ranch. The financial part, so the witness testified, really devolved on Fred to see that these payments were kept up and the taxes paid; they were most always paid out of the bank in Denver; the larger part of the money transactions were payments made when L. C. Kilham was not present and was not consulted; these payments were largely fixed charges.

F. C. Kilham testified that he never saw the assignment that was offered in evidence. He further said: "I owed my father money. One day my father asked me if I would pay into the account of Kilham & Son enough to make up at least one-half the payments he had to make upon the ranch property, and thereby reimburse him to such extent as I could for the amount of money I had borrowed of him. And in pursuance of that talk, when those payments came due I deposited my own money into the account of Kilham & Son, making my father's check for the same amount, and then depositing the amount to the credit of Kilham & Johnson. I did not always have the money to pay as much as my father, and I ofttimes paid it and overdrew my account to pay it. I think I paid into the account in the neighborhood of two thousand dollars. I had no interest in the account of Kilham & Son; it belonged to my father. He thought it might give me a little more prestige with the bank to have the account that way. I drew checks upon the Kilham & Johnson and Kilham & Son accounts as the agent of my father. I also drew against my father's private account. I commenced making payments on the ranch in 1889, 1890 or 1891. Up to that time my father had never asked me to contribute

anything toward the payment of the debt I owed him. In 1888 my father loaned me twelve thousand dollars and at the same time asked me to pay back the three thousand dollars borrowed, by payment on the land contracts as fast as I could. I sold my interest in the State National Bank for about thirty thousand dollars, but did not pay anything on my father's debt because I could make use of the money in some other way, and kept paying in small dribs on the ranch; and in June, 1892, after I had received the thirty thousand dollars I paid four dollars and fifty cents on account of the ranch, one-fourth of the total amount paid on that day. I heard Blakeney and Duncan testify that on certain dates deposits would be made to the credit of Kilham & Johnson, and then on the same dates would appear upon the books checks drawn upon my individual account for the one-fourth the amount deposited; and it is a fact that when those payments were made on acount of land that I would put money into the account, as they testified."

By thus testifying, the defendant Fred C. Kilham admitted the facts as stated by the witnesses Blakeney and Duncan, and corroborated the testimony of the witness Johnson. His story that the payments of installments on the land contracts and for the taxes and expenses of the ranch were made pursuant to an agreement with his father, and that whenever payments were so made by him they were made in reduction of the debt due his father is improbable and inconsistent, and the trial court undoubtedly disbelieved him.

The ranch consists of nearly ten sections of land, and although the proof in support of the trust in four quarter sections is not so clear and convincing as that given in support of the trust in the remaining portions of the ranch, we think that the trust was

sufficiently established and that there was ample unobjectionable evidence to sustain the finding that the undivided one-fourth of the land was held by L. C. Kilham in trust for the use and benefit of his son, Fred C. Kilham.

Perceiving no error in the proceedings prejudicial to the defendants, the judgment is affirmed.

*Affirmed.*