No. 12,710.

Norris *v.* Bradshaw.

(18 P. [2d] 467)

Decided November 19, 1932.   Rehearing denied January 7, 1933.

Mr. ADAIR J. HOTCHKISS, Messrs. FAIRLAMB & FAIRLAMB, for plaintiff in error.

Mr. A. A. CLEMENTS, Mr. C. H. STEWART, for defendant in error.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

HATTIE A. Norris was administratrix of the estate of her husband, William Norris. She sued W. Ray Bradshaw to set aside a gift by William Norris to him of $3,240, evidenced by a duplicate bank deposit slip endorsed by Norris and delivered to him. To obtain a reversal of the judgment dismissing her suit, she prosecutes this writ.

The complaint left it somewhat uncertain whether the plaintiff sued personally or as administratrix, but her counsel stated in open court, and the trial court properly held, that the plaintiff sued as administratrix, and that any judgment in her favor would be for the benefit of the estate.

The plaintiff's contention in this court is that the gift was made for the purpose of preventing Mrs. Norris from receiving her inheritance as widow, and of defeating any claim for widow's allowance that might be allowed her. In the estate proceedings, the county court adjudged her entitled to a widow's allowance of $2,000. Without the property in controversy, the assets of the estate would be wholly insufficient to pay the widow's allowance. There is also involved in this suit a claim to a cheap "shack" built by William Norris upon land owned by the defendant, but in view of the result at which we have arrived, it will not be necessary to discuss that claim.

William Norris was a resident of Paonia. His only child was Lucile Bradshaw, the wife of the defendant. They, also, resided in Paonia. For four years after Norris's first wife (Lucile's mother) died, Lucile kept house for her father, and after her marriage in 1914, he lived with her and her husband until November 8, 1921, when Norris married the plaintiff. At that time he was about sixty years of age, and she also was aged. They lived in the plaintiff's house in Paonia until August 20, 1926, when they moved to her house in Grand Junction. Three days later Norris returned to the home of his daughter and her husband in Paonia, where he continued to reside until October 26, 1927, the date of his death. On August 9, 1926, William Norris made the gift in question.

In the complaint, it is alleged, not only that the gift was made for the purpose stated above, but also that the money was to be held by the defendant for safekeeping, for the use and benefit of Norris during his lifetime, and

to become the defendant's property only upon the death of Norris; and also that it was procured by the defendant by undue influence, and by making false statements to Norris. In his answer the defendant denies those allegations, and avers that the gift was made to him *and his wife* as their own property, because of their many kindnesses to Norris.

■ 1. It is contended by the defendant that the plaintiff, as administratrix, had no right to sue. We think otherwise. Section 5262, Compiled Laws, confers the power upon, and makes it the duty of, executors to sue for the estate, both real and personal, of their testators; and provides that all such personal property "shall be assets in the hands of the executor * * * for the payment of * * * widow's * * * allowance and expenses of administration." See *Grover v. Clover*, 69 Colo. 72, 169 Pac. 578.

■ 2. The evidence tended to show that the relations between the plaintiff and her husband were somewhat strained, and that just a few days before their final separation, he gave to his daughter and his son-in-law $3,240, which was practically all of his property, and that he kept the transaction a secret from his wife. The plaintiff testified that in her conversation with the defendant and his wife, after the death of Norris, the defendant stated that Norris had given the money to him because Norris thought that the plaintiff was going to compel him to invest the money in her apartment house, and also because he thought that she might be going to start divorce proceedings. As the transaction was between Norris and his daughter and son-in-law, the burden of proving the honesty and good faith of the transaction rested upon the defendant. *Roberts v. Dietz*, 88 Colo. 594, 298 Pac. 1062; *Roberts v. Dietz*, 86 Colo. 595, 284 Pac. 337.

■ 3. The defendant was sworn as a witness in his own behalf, whereupon counsel for the plaintiff made the following objection: "We at this time, as required by

the statute, object to any testimony being given by Mr. Bradshaw in regard to any transactions with William Norris, on account of the fact that he is the defendant in an action brought by the administratrix of the estate to recover estate property—excepting, however, that as provided in the exception first—transactions occurring after the death of the deceased. We do not object to Mr. Bradshaw going into such matters as Mrs. Norris has gone into in relation to facts that occurred after the death of the deceased.'' The objection was overruled, and the defendant gave the following testimony concerning the transaction of August 9, 1926: ''Norris said 'Ray and Lucile, I have just collected the money from the Wilcox loan. I am going to give it to you folks, $3,240.00.' He says 'I want you folks to have it.' He says, 'I have always had a home with you folks when I didn't have a home any place else, and it looks like I will have to make my home with you folks later on; and this is the money I have, and I want you folks to have it.' And I says to him 'You better keep that money, Dad—you just as well keep it.' 'No,' he says, 'I am going to give it to you folks—I am going to give it to you right now, and I will know that you have got it.' So he had his certificate of deposit—took it out of his pocket, put it up against the fence post and endorsed it, and says, 'Take that to the bank and get it put in your name.' And after dinner I went down to the bank and had it transferred— * * * deposited it in my name.'' That conversation was said to have been held in the presence of Mrs. Bradshaw.

Mrs. Bradshaw was sworn as a witness in behalf of the defendant, whereupon counsel for the plaintiff made the same objection to her testifying that they made when her husband took the witness stand. The objection being overruled, she gave substantially the same testimony concerning the transaction that her husband gave.

(a) Counsel for the defendant say that the plaintiff cannot successfully urge her objection to those rulings

of the trial court because, under the rule announced in *Milsap v. Stone*, 2 Colo. 137, her objection in that court came too late. In that case no objection was made until after the witness was sworn, and it was held that there was a waiver because the objection was not made in apt time. In *Gilmour v. Hawley Merchandise Co.*, 21 Colo. App. 307, 310, 121 Pac. 765, the court said: "Starkie on Evidence is also cited in the Milsap case. In Vol. 1, p. 136 (Ed. 1842) note u, we find the following: 'The ancient doctrine on this head was so strict that if a witness were once examined in chief, or even sworn in chief, he could not afterwards be objected to on the ground of interest. This rule has been relaxed for the sake of convenience.' " In 8 Ency. Pl. & Pr. 240, the Milsap case is said to be "against the weight of authority." In the case at bar, the Bradshaws were competent witnesses to testify to facts occurring after the death of Norris. C. L. §6556. In such a situation, the objection was in apt time. In 3 Ency. Evidence, 175, it is said: "When the witness' incapacity is only partial, however, the objection need not be taken until he is asked to testify to those matters as to which he is incapacitated." And in *Dowdy v. Watson*, 115 Ga. 42, 41 S. E. 266, the court said: "If, however, a witness is competent to testify in reference to some matters and incompetent as to others, the objection need not be taken until it is sought to examine the witness as to the matters about which it is claimed he is incompetent to testify." We hold that that is a correct statemen of the law. So far as the Milsap decision, supra, conflicts with this decision on this point, it is overruled.

(b)   Counsel for the plaintiff contend that the admission of the Bradshaws' testimony, quoted above, concerning their conversation with Norris was error.

This was an equity proceeding, and in equity proceedings assignment of error based upon the admission of alleged inadmissible evidence will not be considered where there is sufficient unobjectionable evidence to sustain the decree. *Kilham v. Western Bank & Safe De-*

*posit Co.,* 30 Colo. 365, 70 Pac. 409. In such case, it is presumed that, in arriving at its findings, the court disregarded all evidence that is not admissible, and decided the case on the evidence properly admitted. *Webb v. Marks,* 10 Colo. App. 429, 51 Pac. 518; *Livingston v. Swofford Bros. Dry Goods Co.,* 12 Colo. App. 320, 56 Pac. 351; *Glass v. Scott,* 14 Colo. App. 377, 60 Pac. 186. In the case at bar, however, the evidence in question was the only evidence introduced to meet the plaintiff's prima facie case, and to sustain the burden, resting upon the defendant, of proving the honesty and good faith of the Norris transaction. That it was considered by the court, and was the very basis of its findings, is clear. That being so, we will consider the question whether or not the Bradshaws were competent to testify to their conversation with Norris at the time the gift is alleged to have been made by him to them.

██ As we have seen, the plaintiff sued as administratrix. Mrs. Bradshaw was not a party to the suit. Was she directly interested in the event of the suit? If she was, as she was not called as a witness by the plaintiff, and as her testimony concerning the conversation with Norris does not come within the statutory exception hereinafter referred to, the objection to her testifying to such conversation should have been sustained. The fact that she is the wife of the defendant would not, of itself, make her directly interested in the event of the suit, within the meaning of the statute, so as to exclude her testimony. *Butler v. Phillips,* 38 Colo. 378, 88 Pac. 480. To exclude the testimony of a witness on the ground of interest, "his interest must be such that he will either gain or lose by the direct legal operation and effect of the judgment of the court disposing of the facts in issue." 28 R. C. L. p. 504. According to the sworn answer of the defendant and the testimony of the defendant and his wife, the gift was to both of them, although he was permitted to hold the legal title in his own name. If the gift was sustained as valid, the legal title

to the property would remain in Bradshaw, but he would hold an undivided one-half interest therein for the benefit of his wife. She was directly interested in having his legal title upheld and freed from the claim asserted by the plaintiff; that is to say, she was directly interested in the event of the suit, and her testimony concerning the Norris transaction comes within the prohibition of the statute, and should not have been admitted.

As Bradshaw was the defendant and directly interested in the event of the suit, the statute excludes him as a witness in his own behalf, unless he comes within the following exception to the exclusionary provision of section 6556, Compiled Laws: ''In any such * * * suit * * * any adverse party or parties in interest may testify as to any conversation, * * * which conversation * * * occurred before the death and in the presence of such deceased and also in the presence of * * * any heir * * * of such deceased person over the age of sixteen years; *Provided, however,* That such * * * heir * * * is present at the hearing of said * * * suit * * *, or whose testimony is or may be procurable at such trial.'' Mrs. Bradshaw was an heir of Norris, was over the age of sixteen years, and was present at the trial. The purpose of the exclusionary provision is to prevent the despoiling of estates by testimony relating to transactions with persons who, by death, have been rendered unable to contradict such testimony. Where, however, an heir of the deceased was present at the transaction and was also present at the trial, it was considered that the heir would have a sufficient interest in preserving the assets of the estate to check any attempt to establish a fictitious claim against the estate or to its assets. That is the reason for the enactment of the provision quoted above. Mrs. Bradshaw, however, had no interest in preserving the assets of the estate, for after the payment of the expenses of administration and the widow's allowance, there would be nothing left to go to her as heir. She had a direct pecuniary interest hostile to the estate; namely, an in-

terest in establishing the claim of herself and her husband to the property in question. She did not represent the estate within the spirit of the statute; therefore, her presence at the Norris transaction should not, and we hold that it does not, make Bradshaw's testimony admissible under the provision quoted above. If we construed that provision according to its strict letter rather than its spirit, it would open the door to the very evil that the Legislature sought to prevent. For example, if a man died leaving a widow and insufficient property to pay the widow's allowance, and his two children by a former marriage claimed to own, by gift from their father, said to have been made in the presence of both, property that the widow sued to recover as a part of the estate, each of the children, if we adopted that construction, would be entitled to testify. The provision should be given a construction that will avoid such result and accomplish the obvious purpose of the Legislature. We have given it such construction.

There are other assignments of error, but as they concern questions not likely to arise again, they will not be passed upon at this time.

The judgment is reversed, and the cause is remanded, further proceedings, if any, to be in harmony with the views expressed in this opinion.