## No. 9818.

## MODERN WOODMEN OF AMERICA v. WHITE.

Decided June 6, 1921.

Action to recover on the death of assured under a fraternal benefit certificate.   Judgment for plaintiff.

*Affirmed.*

1. INSURANCE—*Fraternal Societies—By-laws.*   A by-law of a fraternal insurance society providing that the absence or disappearance of a member without proof of actual death, shall not entitle his beneficiary to recover on a benefit certificate, is unreasonable, and invalid as to a beneficiary under a certificate issued before the adoption of the by-law.

2. DEATH—*Presumption.*   In order to raise the presumption of death of a person after seven year's absence without tidings, it must appear among other things, that diligent inquiry and efforts have been made to ascertain his whereabouts; but what is sufficient in the way of efforts to locate the missing person should be measured by the circumstances of each particualr case.

3.    *Evidence of Search and Inquiry.*   Evidence of search previous to the date assured was last heard from, held admissible.

4. INSTRUCTIONS—*Incomplete—Harmless Error.*   An incomplete instruction does not afford a basis for reversible error, where the omission is cured by a subsequent instruction.

5. APPEAL AND ERROR—*Instructions—Exception.* Unless in an appropriate way, exception to an instruction is made in the court below, so that its attention is called to the error in law complained of, the instruction will not be considered on ·review. This rule is applicable where the instruction is not clearly and inherently erroneous, and is correct so far as it goes.

6. INSTRUCTIONS—*Refusal.* The refusal of requested instructions will not constitute reversible error where there is only a ·remote, if any, possibility that the result would have been changed had the instructions been given.

*Error to the District Court of Morgan County, Hon. L. C. Stephenson, Judge.*

Mr. TRUMAN PLANTZ, Mr. WALTER S. COEN, Mr. GEO. G. PERRIN, for plaintiff in error.

Mr. LEONARD ANDERSON, Messrs. ALLEN & WEBSTER, for defendant in error.

*En banc.*

MR. JUSTICE ALLEN delivered the opinion of the court.

THIS is an action brought by Myrtle May White against the Modern Woodmen of America, to recover upon a Benefit certificate which had been issued by the defendant to Adolphus Irwin White, with plaintiff as beneficiary. Plaintiff obtained a verdict and judgment, and defendant brings the cause here for review.

The defendant, Modern Woodmen of America, is a fraternal beneficiary society making provision for the payment, of benefits in case of the death of any of its beneficial members. The certificate sued on in the instant case was issued on January 29, 1908, and was payable to the plaintiff, as beneficiary, in the event of the death of the beneficial member, Adolphus Irwin White.

The complaint alleges, among other things, that White disappeared on June 11, 1911, and further facts are alleged in order to raise the common law presumption of death which arises from the unexplained absence of a person from his last or usual place of residence for a sufficiently

long period of time without having been heard of during such period.

The answer contained a general denial and also several affirmative defenses. The defendant for one of its defenses alleges, among other things, that the contract sued on by plaintiff is evidenced by three instruments, namely, the application for membership, the benefit certificate, and the by-laws of the society. It is then alleged that its by-laws in force since September 1, 1908, have provided as follows:

"Sec. 66. *Disappearance No Presumption of Death.*— No lapse of time or absence or disappearance on the part of any member, heretofore or hereafter admitted into the Society, without proof of the actual death of such member, while in good standing in the Society, shall entitle his beneficiary to recover the amount of his Benefit certificate, except as hereinafter provided. The disappearance or long continued absence of any member unheard of, shall not be regarded as evidence of death or give any right to recover on any Benefit certificate heretofore or hereafter issued by the Society until the full term of the member's expectancy of life, according to the National Fraternal Congress Table of Mortality, has expired within the life of the Benefit certificate in question, and this law shall be in full force and effect, any statute of any state or country or rule of common law of any state or country to the contrary notwithstanding. The term 'within the life of the Benefit certificate,' as here used, means that the Benefit certificate has not lapsed or been forfeited, and that all payments required by the By-laws of the Society have been made."

The by-law if enforceable against the plaintiff would deprive her of the right to rely upon the presumption of death and, as the record shows, would defeat her action. The defense based on the by-law above quoted was stricken from the answer, on motion of the plaintiff, and at the trial the court refused to admit the by-law in evidence.

The principal question upon this review is whether the by-law pleaded by the defendant is valid and enforceable as against the plaintiff.

The by-law in question was adopted September 1, 1908; the benefit certificate sued upon was issued prior to that time, namely, January 29, 1908. In the application for membership White agreed, among other things, that the certificate should be void if he failed to comply with any of the by-laws then in force or thereafter adopted. The Benefit certificate recites, among other things, that the benefit shall be paid to the beneficiary in the event of the death of the member,

"Provided, * * * that * * * all the by-laws of this Society as the same now exist or may be hereafter modified, amended or enacted shall be fully complied with."

An agreement on the part of a member, to be bound by all future changes in the by-laws of the society that it may see fit to enact, is subject to the implied condition that they must be reasonable. 19 R. C. L. 1204, sec. 21. In *Roblin v. Supreme Tent of Knights of Maccabees,* 269 Pa. 139, 112 Atl. 70, the court said:

"True, the certificate provides that the member shall abide by by-laws thereafter enacted, and that is valid in so far as his rights depend upon by-laws; but substantial rights which rest upon the contract cannot be abrogated by new by-laws, even where the power to make them is reserved. * * * The right to rely upon the presumption of death is substantial, as it may be the only means by which a beneficiary can ever recover, and a policy holder cannot be deprived of such right by a new by-law. * * *"

The defendant cites Section 8, Chapter 139, p. 422, Session Laws of 1901, wherein it is provided that:

"Any changes, additions or amendments to * * * the constitution or laws (of the society) duly made or enacted subsequent to the issuance of the benefit certificate shall bind the member and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership."

The statute does not, however, validate every by-law

that might be adopted.   For example, it could not render effective a by-law which would change the contract so as to impair vested rights or deprive a member of substantial rights conferred expressly or impliedly by the contract itself.   The reason is that "the obligation of every contract is protected from state interference by the federal constitution," 19 R. C. L. 1207, sec. 23.   So far as concerns amended by-laws, the statute contemplates only by-laws or amendments thereto that are reasonable, and does not intend to make valid any amendment which otherwise would be void on the ground of being unreasonable.

The statute may, therefore, be eliminated from further discussion, and the question left to be determined is, whether, so far as plaintiff is concerned, the by-law involved in the instant case is invalid as unreasonable or for some other reason.

In 19 R. C. L. 1205, sec. 22, it is stated that amendments to by-laws may be reasonable as to future members on the ground that they assent thereto on becoming members, and unreasonable as to pre-existing members who have not given their assent to the modification of their contract.   In the instant case, the plaintiff is the beneficiary of a pre-existing member.

The identical by-law involved in the instant case has been passed upon by appellate courts in other states recently, and a majority of such courts have held the by-law to be invalid and unenforceable as against the beneficiary of a member whose certificate was issued, as in the instant case, prior to the adoption of the by-law.

The supreme court of Wisconsin held this by-law invalid, in *Sweet v. Modern Woodmen of America,* 169 Wis. 462, 172 N. W. 143.   The supreme court of Nebraska arrived at the same conclusion in *Garrison v. Modern Woodmen of America,* (Nebr.) 178 N. W. 842.   In *Boynton v. Modern Woodmen of America,* (Minn.) 181 N. W. 327, the court said:

"We concur in the ruling of the learned trial court that the new by-law substantially changed the contract between

the parties and is unreasonable and void.  *  *  *  The amended by-law not only abrogates that rule of evidence, and that method of proof of death, in which the insured perhaps can have no vested right, but materially changes the contract in point of substance by imposing upon the beneficiary the burden of continuing the payment of dues and assessments for a long period of time after the lapse of the seven years' disappearance, namely, during the period of the insured's life expectancy.   That the change is unreasonable seems the only fair conclusion.  *  *  *"

The supreme court of Iowa, consistent with several of its previous decisions on the same subject, held this by-law to be invalid.   In *Haines v. Modern Woodmen of America,* (Iowa) 178 N. W. 1010, the by-law was regarded as unreasonable, as therefore invalid, upon each of two grounds, one being in accord with the reasoning in *Hannon v. Grand Lodge,* 99 Kan. 734, 163 Pac. 169, L. R. A. 1917C, 1029, to the effect that the by-law interferes with one of the functions of a court in the matter of determining issues of fact.   The Iowa court said:

"To say the very least, the right to thus deprive the court of the exercise of its ordinary functions, and to add to or take from a proved fact the probative force and effect to which it is otherwise naturally entitled, is one which will be hedged within very narrow bounds.   To hold otherwise, and permit the insurer to restrict its liability by arbitrarily enlarging or minimizing the effect of competent evidence, is to arm it with power which renders practically worthless the protection which it professes to furnish to the insured."

The court held the by-law unreasonable also for a reason expressed as follows:

"When the contract was made, it was and still is competent under the law of the state to establish the fact of death by proof of certain facts from which such a presumption arises.   This right was a material element or factor in the value of the promised benefit to the member and his beneficiary.   Permit the insurer by its own arbi-

trary act to declare that it will not pay the benefit upon such legitimate proof as will satisfy a court of justice of a member's death, nor will it pay at all, except upon performance of a condition which cannot be satisfied in an average lifetime, and then only on the further condition that during such period the beneficiary shall continue to pay a burdensome tribute into the insurer's treasury, and you will leave nothing of value in a contract of fraternal insurance of which the member may not be 'fraternally' despoiled at the uncontrolled will or whim of the insurer."

The Haines case was followed in a per curiam opinion in *Fryer v. Modern Woodmen of America*, (Iowa) 179 N. W. 160. The same by-law was under consideration in the earlier case of *Olson v. Modern Woodmen of America*, 182 Iowa, 1018, 164 N. W. 346, L. R. A. 1918F, 1164, and there held invalid and unenforceable as against a beneficiary of a member who disappeared prior to the time the by-law was adopted. In the Haines case, as in the instant case, the disappearance took place after the by-law was enacted. The principle upon which the Iowa court proceeded in both cases, reaching the same conclusion in each, is stated in the Olson case as follows:

"Of course, the assured sustains a dual relationship. He is a member. * * * But he also sustains contractual relationships, and in this his relationship is antagonistic, so to speak, to the society. * * * It follows, therefore, that any by-law adopted after the issuance of the certificate, which destroys, or materially and unreasonably affects the rights of the member under the certificate, in so far as his rights to recover the indemnity provided in the certificate are concerned, are held to be unreasonable; and this upon the theory that the reserve power and the consent will not be deemed to have included such right, and the assured will not be deemed to have consented to such by-law becoming a part of his contract."

The weight of authority, as well as ample reason, sustains the holding in the cases above cited, and we will therefore follow them, and decline to adopt the reasoning

or the conclusion in *Steen v. Modern Woodmen of America,*
296 Ill. 104, 129 N. E. 546, and other cases cited by plain-
tiff in error.  The by-law involved in the instant case was
adopted after the certificate was issued, and for the reasons
stated in the cases herein followed, the by-law is not en-
forceable against the plaintiff.

It is contended by the plaintiff in error that the plain-
tiff below failed to show that diligent search was made to
ascertain the whereabouts of Mr. White subsequent to the
time he was last heard of or from and known to be living.

In order to raise the presumption of death of a person
after seven years' absence without tidings, it must appear,
among other things, that diligent inquiry and efforts have
been made to ascertain his whereabouts.  However, as said
in *New York Life Ins. Co. v. Holck,* 59 Colo. 416, 429, 151
Pac. 916, 922:

"What would be sufficient in the way of efforts to locate
the missing person, should be measured by the circum-
stances of each particular case."

Whether the inquiry made in a given case was diligent,
depends on the facts and circumstances of that case.  *Kauf-
mann v. N. Y. Life Ins. Co.,* (Cal. App.) 186 Pac. 360.

The evidence shows that Adolphus Irwin White left his
home at Brush, Colorado, on February 20, 1911, and went
to Denver for the purpose of obtaining medical advice.  He
was then afflicted with gastritis.  He went on to the west-
ern coast, and on May 20, 1911, wrote to his wife from
Seattle, Washington.  The last tidings which his wife,
plaintiff herein, received from him was a letter to her,
written by him at Fresno, California, and post marked
at San Jose, California, June 10, 1911.  The date
of White's disappearance is given in the complaint as
June 11, 1911.  As evidence of a search and inquiry on
the part of the plaintiff subsequent to that date, the record
shows that upon the receipt of her husband's last letter,
the plaintiff wrote two letters to him, directing one to the
place where his letter was written and one to the place
from which it was mailed, San Jose, California.  No an-

swer was received. Both of her letters were returned unclaimed. She had no means of knowing where he could be found. In his last letter, White said he was "thinking of taking a boat" for the Isthmus of Panama, and also that he "may go" to certain "springs," the name or location of which he did not name. Thereafter the plaintiff, in an effort to locate her husband, made inquiries of persons who had been at the Isthmus of Panama, and also of persons who had been in California. Since the date of her husband's disappearance, the plaintiff was in communication with his relatives. The evidence shows that the plaintiff and her husband's relatives, since his disappearance, visited with and otherwise kept in touch with each other, and that such relatives informed her that they had received no tidings of Mr. White. This was equivalent to making inquiries. It was not incumbent upon the plaintiff to make specific inquiries of her husband's relatives when they gave her all the information which such inquiries would elicit.

The evidence also shows that White was not estranged from his wife, the plaintiff, or from their children, but had love and affection for them, and that the person most likely to hear from him, if living, is the plaintiff. If a third person sought to derive a benefit from the presumed death of White, the rule relating to diligent inquiry would require, or at least suggest, that such claimant make inquiries of the wife, she being the person who probably would have heard from the missing person if the latter were living, or make inquiries of other persons likely to be in a similar position. However, the rule in this respect, if such is the rule, should be relaxed where the wife, who was not estranged from her husband, is herself the claimant and he the missing person; otherwise she would be required to go through the form of inquiring of herself.

The evidence also shows that White having been a member of the Odd Fellows Lodge at Brush, Colorado, a circular was printed, with White's photograph upon it, and more than a hundred copies were sent out by an officer of

that Lodge. While these circulars were issued before the time that White was last heard of, yet they were never recalled, and they remained with various lodges throughout the western coast after White's disappearance, and as a means of search and inquiry were as efficient as if they had been prepared and sent out after such disappearance. The circular included the offer of a reward of $25 for information regarding the whereabouts of Mr. White.

It is not necessary that all the efforts to locate the missing person should actually be made by a claimant himself. The plaintiff may show what search and inquiry had been conducted by others.

Charles H. Richards, a brother-in-law of Mr. White, testified that he is acquainted with the relatives of the latter, including three brothers who live in the state of Iowa, and that he talked to them about Mr. White's disappearance. One of the brothers heard from Mr. White about the same time that Mrs. White received the last letter from him. The others never heard from him. Richards himself received no tidings of Mr. White. The witness Orville Lehman talked with Mr. White's brothers at a time about three years preceding the trial of this case and subsequent to the time of Mr. White's alleged disappearance.

The plaintiff evidently did all that any one in her circumstances could reasonably be expected to do, in the matter of search and inquiry. The evidence shows that Mr. White was afflicted with a disease which was liable to result in his death. His wife had reasonable cause to believe him to be dead after failing to receive tidings of him, and to believe that further inquiries would be useless. In our opinion the efforts made by the plaintiff to locate her missing husband were sufficient to meet the requirements of the rule relating to search and inquiry. Too much stress should not be laid on this rule. Some courts ignore it entirely. 17 C. J. 1171. Other courts say that the presumption of death may "be augmented or weakened by the evidence or lack of evidence on the subject of search and inquiry made for the missing person." *Haines v. Modern*

*Woodmen of America, supra.* The record sustains plaintiff's case in the matter of search and inquiry.

It is contended that the court erred in admitting evidence as to search for the insured prior to June 11, 1911. Such evidence was not prejudicial to the defendant, and its admission was not reversible error. If the plaintiff, and the insured's other relatives, made a diligent search for Mr. White prior to the time he was last heard from, it tends to show that they really wanted to find him after that time. Such evidence also shows why search at certain places would be unavailing, and it was not incumbent upon them to repeat their efforts as to those places. Furthermore, the evidence objected to tended to show the feeling that existed between the insured and his wife and his relatives, and that the circumstances were not such as to account for his not being heard of or from without assuming his death.

Error is assigned to the giving of Instruction No. 5, which reads as follows:

"You are instructed that it is a rule of law that if a person has been absent from his residence for a period of seven years or more, and in that time has not been heard of or from by any one who would naturally hear from him were he alive, the presumption arises that he is dead, unless the circumstances are such as to account for his not being heard of or from without assuming his death."

The defendant objected to the giving of this instruction upon the ground "that it leaves out of consideration the element of necessity for search." If the instruction given is amenable to this objection, the error was cured by the very next instruction, No. 6, which were it not for the figure "6" would appear to be a part of Instruction No. 5. The element of search is covered by Instruction 6, and if it should have been made a part of Instruction 5, then the latter instruction was merely incomplete. An incomplete instruction may be cured by a subsequent instruction. *Stratton, etc. Co. v. Ellison,* 42 Colo. 498, 94 Pac. 303; 38 Cyc. 1782, *et seq.*

Instruction No. 6, above mentioned, reads as follows:

"It must also appear that in order to raise the presumption of death of a person who has been absent for a period of seven years, that inquiry and efforts have been made to ascertain his whereabouts."

This instruction itself was objected to. The principal objection *now* urged against it is that it "ignores the element of diligence." Assuming that the instruction should have included this element and required that the inquiry and efforts be diligent, this is an error of which the defendant cannot complain in this court, since in objecting to the instruction in the court below the "element of diligence" was not pointed out. The objection was general; the defendant objected "for the reason that it does not properly define the inquiry and search." In *National Fuel Co. v. Green,* 50 Colo. 307, 115 Pac. 709, this court said:

"Unless, in an appropriate way, an exception to an instruction is made in the court below, so that its attention is directed to the error of law complained of, the instruction will not be considered on review."

This rule is applicable where, as here, the instruction is not clearly and inherently erroneous, and is correct as far as it goes. 3 C. J. 845, sec. 752. The objection did not direct the court's attention to the absence of the word "diligent." Moreover, counsel for defendant somewhat invited the omission, since in objecting to Instruction No. 5 he spoke of the "necessity for search," not necessity for diligent search.

Another objection urged against Instruction No. 6 is that it does not state that the inquiry and search must be made subsequent to the time that the missing person was last heard of and known to be living. We do not find that the instruction was misleading or erroneous on the ground thus suggested. Taken in connection with the instruction immediately preceding it, it sufficiently shows that the court was dealing with the seven year period involved in the presumption of death. The preceding instruction shows what must have occurred "in that time."

Error is assigned to the refusal to give defendant's requested instructions. As argued, this refers to instructions concerning the presumption of death from seven years' absence. The instructions which were given fairly state the law on the subject, and if the requested instructions were more complete or appropriate, there was no reversible error in refusing the same, for the reason that, considering all the evidence in the record, there is only a remote, if any, possibility that the result would have been changed by the giving of the requested instructions. 4 C. J. 1048, sec. 3031.

The judgment is affirmed.

MR. CHIEF JUSTICE SCOTT not participating.