## No. 12,374.

SCHICK *v.* PRITCHARD ET AL.
(299 Pac. 1061)

Decided May 25, 1931.

Mr. G. H. BRADFIELD, Mr. JOHN HARBOTTLE, for plaintiff in error.

Mr. ROBERT E. WINBOURN, for defendants in error.

*In Department.*

MR. JUSTICE BUTLER delivered the opinion of the court.

FRED J. Schick sued R. W. Pritchard and his wife, Nettie Pearl Pritchard, to recover a judgment against Pritchard for $1,000 and interest, and to subject certain land to the payment of the judgment. To reverse a judgment for the Pritchards, Schick brings the case here.

Counsel for Schick say that the case "rests primarily upon the preponderance of the evidence," and conclude that the preponderance of the evidence entitles Schick to a judgment. Counsel for the Pritchards says that, "The only question that confronts this court is whether it shall disturb the findings of fact and judgment based thereon." They correctly state the question submitted by the record. The trial court is the judge, not only of the credibility of the witnesses and of the weight of the evidence, but of the inferences properly deducible from the facts and circumstances proven at the trial. On review, the record is viewed in the light most favorable to the party successful in the trial court, and every inference fairly deducible from the evidence is drawn in favor of the judgment. *Roberts v. Dietz,* 88 Colo. 594, 298 Pac. 1062, just decided.

Bearing these principles in mind, let us look at the evidence, most of which is undisputed.

Pritchard, who owned a farm, contracted to sell it to one Walso for $10,000. The contract provided that it should not be assigned "without the approval of R. W. Pritchard." Walso paid $500 in cash, the balance to be paid later. Thereafter Walso had an opportunity to sell to one Kaiser for $12,500, but Pritchard would not consent to an assignment of the contract. It was orally agreed that the Walso contract should be terminated; that Pritchard should sell to Kaiser for $12,500, $3,000 to be paid at once; that when Kaiser made the cash payment of $3,000, it was to be divided equally between Pritchard and Walso; and that each should pay one-half ($250) of the commission earned by the real estate agent who negotiated the sale to Kaiser. This agreement, with some modification, was carried out. Instead of paying $3,000 of the purchase price at once, Kaiser was permitted to pay $1,000 cash, $2,000 to be paid in sixty days. On January 1, 1921, he was to pay $2,000, evidenced by his promissory note, and was to pay $1,000 each year thereafter until the full payment of the balance. On October 2, 1919, when the deal between Pritchard and Kaiser was made, Pritchard orally agreed with Walso that the cash payment of $1,000 should be divided equally with Walso. Walso accordingly received $500, which reimbursed him for his cash payment previously made to Pritchard. It was further agreed that, as Pritchard was in need of money, he should retain the entire $2,000 that was due in sixty days. In due time that money was paid to and was retained by Pritchard. The Kaiser note for $2,000, due January 1, 1921, together with the other deferred payment notes, all payable to the order of Pritchard, were in escrow in the Weld County Savings Bank. On that $2,000 note the following direction to the bank was written and was signed by Pritchard, pursuant to agreement with Walso: "When this note is paid, deliver $1,000 thereof, with interest on $1,000 thereof, to Ole Walso.

R. W. Pritchard.'' On January 1, 1921, Kaiser paid to
Pritchard $141 interest on the $2,000 note due that day
and also $152.50 of the principal. On March 19, 1921, he
paid to Pritchard $203.50 of the principal. All of this
money was retained by Pritchard. On January 28, 1921,
Walso, being indebted to McArthur and Schick, assigned
to them his interest in the $2,000 note as security for his
indebtedness to them. This assignment was endorsed on
the note. Later McArthur assigned his interest to
Schick. As Kaiser was unable to carry out his contract
with Pritchard, he and Pritchard canceled the contract,
and the balance due on the $2,000 note that matured on
January 1, 1921, was never paid. Pritchard thereafter
conveyed the farm to his wife. Schick demanded of
Pritchard the payment of $1,000, and, upon the latter's
refusing to pay, brought this action. There is no dispute
concerning the foregoing facts.

The controversy concerns the terms of the agreement
made orally by Pritchard and Walso, under which the
former was permitted to retain the entire amount of the
second payment made by Kaiser, namely, $2,000. That
under the original agreement Walso was entitled to one-
half of that $2,000 is admitted.

Schick's counsel contend that the transaction whereby
Pritchard was permitted to retain the $2,000 was, in
effect, a loan of $1,000 by Walso to Pritchard, to be re-
paid on January 1, 1921, and that Pritchard's direction,
written on the $2,000 note, ''When this note is paid, de-
liver $1,000 thereof, with interest on $1,000 thereof, to
Ole Walso,'' was intended merely as security for Pritch-
ard's debt to Walso. There is evidence tending to sup-
port this contention. Upon the other hand, there is evi-
dence tending to support the contention of counsel for
the Pritchards, namely, that the transaction was an as-
signment of only an undivided one-half interest in the
note, and that Walso took such interest in the note in
lieu of all demands against Pritchard.

As it is our duty to do, we will take those parts of the

evidence most favorable to the Pritchards. Pritchard testified that he never tried to borrow money from Walso; that it was agreed that "Walso was to wait for his money the same as I was to wait for mine out of that $2,000 when it was paid"; that the agreement was that when the $2,000 was paid Walso "got his $1,000, and I was to get mine"; that Pritchard refused to give Walso his note, and told Walso that "he would have to wait for his money the same as me"; and that Walso's money was not due until the note was paid. Walso testified: "Q. Now, then, when did Pritchard first say anything to you about using part of this money? A. Not before we came to the real estate office that I can remember. Q. Then, what did he say? A. Why, he called it off. Q. Go ahead and say what you said back to him? A. Why, I told him I wanted his personal note. Q. And what did he say to that? A. He would not give me one. Q. Did you finally consent to let him keep the $2,000 and use it? A. I did. Q. And when was he to pay you your share of this profit? A. A year from 1920. It was supposed to be paid in 1921, January 1. Q. Did you ask him for any security? A. No. Q. Was there any endorsements made on this note? A. Not at that time. Q. This note was given October 2, 1919. Do you recall whether or not there was any writing on it? A. Yes, on the back of it. Then I was supposed to have $1,000 out of that note. * * * I talked with Mr. Pritchard about wanting my $1,000 out of that other $2,000 that was paid at the time. He didn't say I couldn't have it. He agreed to give me the thousand out of that note when it was paid, and I finally agreed. I had no other agreement with Mr. Pritchard than what was included in the note. That is, when the note was paid, deliver $1,000 with interest to me. * * * I thought I had $1,000 coming at the day of the sale. Q. You knew that was changed when you put that endorsement on that note? A. Yes, sir. Q. So you agreed to that? Q. Yes, I agreed to wait a year for that money. Q. And you agreed to get your money out of the Kaiser note? A.

Well, it was not said how I should get my money. It was said I should wait for one more year. Q. Anyhow, it was all covered by the endorsement on that note, whatever that is? A. Yes.'' It is true that Walso gave other testimony, some of which was favorable to Schick's contention. The witness Bliss also gave testimony favorable to that contention. Mrs. Pritchard testified that Walso was to receive $1,000 when the note was paid in 1921.

There was confusion and contradiction in the testimony. No one supposed that the note would not be paid. It was secured by a trust deed on the farm. The idea that Kaiser would be unable to carry out his agreement to purchase, and would be obliged to abandon the agreement, occurred to no one. If it had, the agreement, no doubt, would have been reduced to writing, or, if oral, would not have been left vague and indefinite, as it was, but would have been clearly expressed.

The evidence as to what was assigned by Walso to McArthur and Schick is unsatisfactory and confusing. Walso testified that he assigned his interest in the note. Though some of the testimony of Schick indicates that he thought that the assignment covered, not only an interest in the note and its proceeds, but also Walso's original claim against Pritchard, he admitted: ''This note assigned to me I had never seen. I left it to Mr. Bliss. It was endorsed to me as security for a $1,100 note of Walso. I received no other security. * * * My attorney said it was in the Weld County Savings Bank and would be placed to my credit when paid.''

The trial court found that the assignment by Walso was not of a demand against Pritchard for $1,000, as claimed by Schick, but only of Walso's one-half interest in the Kaiser note for $2,000 and the proceeds thereof. That finding was supported by sufficient evidence, and cannot be disturbed by us. So that even if the transaction between Pritchard and Walso resulted in a valid claim by Walso against Pritchard for $1,000,

Schick would not be entitled to enforce that claim against Pritchard.

The trial court found, upon conflicting evidence, that Walso accepted, in lieu of any claim that he may have had originally against Pritchard, an assignment of $1,000 and interest out of the proceeds of the $2,000 note. As we have seen, there was ample evidence to support the finding; on review, therefore, that finding is conclusive.

But it is clear, even from the evidence most favorable to the Pritchards, that Walso had an equal interest with Pritchard in the $2,000 note, and in the proceeds thereof. Indeed, Pritchard admitted that it was agreed that Walso was to wait for his money the same as Pritchard was to wait for his, "out of that $2,000 when it was paid." There was nothing in the agreement giving Pritchard the right to retain all partial payments until he had received his full share. Each had the right to one-half of all payments as they were made. Pritchard collected $356 on account of the principal of the note and $141 on account of interest; in all $497. One-half of that amount belonged to Schick, as assignee of Walso. Pritchard retained the entire amount.

There is no basis for the claim that Schick is entitled to any lien upon the farm.

As to what right, if any, Schick has, as against Kaiser, by virtue of the former's ownership of an interest in the $2,000 note given by Kaiser, we express no opinion, as that matter is not before us.

As to Nettie Pearl Pritchard, the judgment is affirmed.

As to R. W. Pritchard, the judgment is reversed, and the cause is remanded with instructions to render judgment against him and in favor of Fred J. Schick for $248.50, with interest at the rate of 8 per cent per annum from the dates of the several payments to the date of the judgment.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE MOORE and MR. JUSTICE BURKE concur.