**PUMA INDUSTRIAL CONSULTING, INC., Plaintiff-Appellee,**

v.

**DAAL ASSOCIATES, INC., Daal Trimming & Embroidery, Inc., Daal Trimming & Embroidery, David Shamilzadeh and Al Conforti, Defendants.**

**Appeal of DAAL ASSOCIATES, INC., David Shamilzadeh, and Al Conforti, Defendants-Appellants.**

**No. 503, Docket 86–7820.**

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1986.
Decided Jan. 7, 1987.

York City, on the brief), for defendants-appellants.

Frank S. Winter, New York City, for plaintiff-appellee.

Before TIMBERS, VAN GRAAFEILAND and PIERCE, Circuit Judges.

TIMBERS, Circuit Judge:

Daal Associates, Inc. ("Daal"), a New York corporation, appeals from a judgment entered September 10, 1986 in the Southern District of New York, Shirley Wohl Kram, *District Judge,* awarding $82,418.13 damages to Puma Industrial Consulting, Inc. ("Puma") on its claim for commissions due under a written contract ("the contract") between Daal and Puma dated July 21, 1981. David Shamilzadeh and Al Conforti, the officers and sole shareholders of Daal, appeal from the judgment to the extent that it was entered against them jointly and severally as individuals.

The district court held that the contract did not violate federal law and therefore was enforceable; that Daal breached the contract by refusing to pay Puma the agreed upon commission; that through their course of dealing the parties had impliedly modified the contract to provide for a reduction in the amount of the commission to 1.85 percent; and that, since Daal was doing business as a partnership, Shamilzadeh and Conforti were jointly and severally liable for the amount of the fee as the general partners of the partnership.

On appeal, Daal argues (1) that the contract provided for an illegal contingent fee agreement that violated 41 U.S.C. § 254(a) (Supp. III 1985), is contrary to public policy and therefore is unenforceable; and (2) that the individuals Shamilzadeh and Conforti were not individually liable for the amount of the commission. We hold that the contract does not violate § 254(a) or public policy and that Shamilzadeh and Conforti are not individually liable for the commission.

Donald M. Spector, New York City (John M. O'Connor, and DeForest & Duer, New

We reverse that portion of the judgment that holds Shamilzadeh and Conforti individually liable. We modify the judgment accordingly. As modified, we affirm the judgment.

## I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Daal is a wholesaler of embroidery, trimming and knitwear products. Prior to Daal's incorporation in 1978, Shamilzadeh and Conforti, the officers and sole shareholders of Daal, transacted business as partners. Daal transacts business under the name "Daal Trimming & Embroidery". Puma is a New Jersey corporation which assists small businesses in obtaining and satisfactorily performing government and other contracts.

On July 21, 1981 Puma and Daal entered into the contract. Its terms provided that Puma would use its best efforts to obtain contracts, on behalf of Daal, to manufacture products for the government and other agencies and to submit bids for those contracts. In return, Daal agreed to pay Puma a commission of five percent of the gross amount of any contract awarded or any bid accepted.

Puma subsequently arranged for Daal's name to be added to the Defense Personnel Support Center's list of prospective bidders. Puma then reviewed approximately fifty bids with Daal and assisted Daal in submitting approximately sixteen bids. Two of these bids resulted in contracts. The first contract was for the supply of epaulets ("the epaulet contract"). The second was for the supply of men's wool sweaters ("the sweater contract").

Daal failed to pay Puma the agreed upon commission after the government awarded Daal the sweater contract. Puma commenced the instant diversity action in the Southern District of New York to collect a commission of $222,751.69 due under the sweater contract. After a bench trial, the court filed its opinion dated September 8, 1986. It found that through the course of their dealings the parties impliedly had agreed that Puma's fee would be 1.85 percent rather than 5 percent and that a fee of 1.85 percent of the gross amount of the sweater contract was due and owing to Puma. The court also found that the sweater contract was awarded to Shamilzadeh and Conforti as the general partners of Daal Trimming & Embroidery and that they therefore were jointly and severally liable for the commission. The court concluded, as a matter of law, that the contingent fee provision of the contract did not violate federal law. The court ordered judgment to be entered in favor of Puma and against Daal, Shamilzadeh and Conforti in accordance with its opinion. Judgment was entered September 10, 1986. Thereafter Daal filed various motions for a stay of execution of any proceedings to enforce the judgment, to vacate and amend the judgment, and for a rehearing. On September 25, 1986 Daal, Shamilzadeh and Conforti took the instant appeal. This Court granted a stay pending appeal on October 7, 1986 and expedited the appeal.

## II.

We turn first to the issue whether the contingent fee provision of the contract violates federal laws and regulations which require contracts to contain

"a suitable warranty ... by the contractor that no person or selling agency has been employed or retained to solicit or secure such contract upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business...."

41 U.S.C. § 254(a) (Supp. III 1985); *see also* 41 C.F.R. §§ 1–1.500 to 1–1.509 (1984), now in substance 48 C.F.R. §§ 3.400–3.410 (1985).

The objective of this requirement is to eliminate improper influence in the obtaining of government contracts and to elimi-

nate arrangements which encourage the payment of "inequitable or exorbitant fees bearing no reasonable relationship to the services actually performed". 41 C.F.R. § 1–1.500 (1984).

Daal argues that the contingent fee provision of the contract violates the above warranty and therefore that the contract is unenforceable. True, we have held that contingent fee provisions in violation of the statutory warranty are unenforceable and against federal policy. *Quinn v. Gulf & Western Corp.*, 644 F.2d 89, 93 (2 Cir.1981). To be enforceable therefore the contract must satisfy the exception in § 254(a) for "bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business...."

In determining whether Puma was a bona fide commercial or selling agency maintained by Daal for the purpose of securing business, five factors must be considered. The first factor is whether the fees are "commensurate with the nature and extent of the services" rendered by Puma and not "excessive as compared with the fees customarily allowed" for similar services. 41 C.F.R. § 1–1.504–5(b) (1984), now in substance 48 C.F.R. § 3.408–2(b) (1985). Daal argues that Puma's fees are excessive and are not commensurate with the services provided in that Puma's only contribution in connection with the sweater contract was filling in boxes on the application form. This argument, however, does not take into consideration that, in addition to a number of other services Puma performed for Daal under the contract, Puma arranged to have Daal added to the government's list of bidders; that Puma worked with Daal in reviewing bids and forms and in preparing bids; and that Puma aided Daal in obtaining a "Certificate of Competency" from the Small Business Administration, without which the government would not have awarded the contracts to Daal. Moreover, Puma adduced evidence that a fee of five percent is customary in the business. The other factors to be considered are whether Puma had adequate knowledge of Daal's products and business,

whether there has been continuity in the relationship between the parties, whether Puma is an established concern, and whether the arrangement is not confined to obtaining government contracts. 41 C.F.R. § 1–1.504–5(b) (1984), now in substance 48 C.F.R. § 3.408–2(b) (1985). There is sufficient evidence in the record to show that Puma satisfied all of these requirements.

The consideration and application of these enumerated factors can be meaningful only in light of the policies underlying § 254(a). The purpose of this warranty requirement is to "protect government agencies against corrupting influences". *Mitchell v. Flintkote Co.*, 185 F.2d 1008, 1010 (2 Cir.), *cert. denied*, 341 U.S. 931 (1951). *Accord, Quinn v. Gulf & Western Corp., supra*, 644 F.2d at 93. It is the threat of persons selling government influence or access to government officials that is being protected against. *Quinn, supra*, 644 F.2d at 93. The contract between Puma and Daal does not pose such a threat. Puma is in the business of assisting small businesses in procuring contracts with the government and other agencies. There is not even a hint of the selling of governmental influence. The contract between Puma and Daal fits squarely within the selling agency exception provided in § 254(a).

We hold that the district court correctly determined that, since the contract does not violate federal law or public policy, it is enforceable.

### III.

We turn next to the issue whether Shamilzadeh and Conforti are liable individually under the contract. The district court found that the sweater contract was awarded to Daal Trimming & Embroidery, a partnership, and that Shamilzadeh and Conforti were the general partners thereof. Consequently, the court held Shamilzadeh and Conforti jointly and severally liable as individuals. We disagree.

We recognize of course that findings of fact made by the district court should not

be set aside unless clearly erroneous. Fed. R.Civ.P. 52(a). Due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses. *Id.* "There is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence." *Canizzo v. Farrell Lines, Inc.,* 579 F.2d 682, 686 (2 Cir.), *cert. denied,* 439 U.S. 929 (1978). *Accord, Anderson v. Bessemer City,* 470 U.S. 564, 573–81 (1985). When a conclusion represents a mixed question of law and fact, however, that conclusion is open to full review. *First National Bank of Cincinnati v. Pepper,* 547 F.2d 708, 710 (2 Cir. 1976).

The government awarded the sweater contract to Daal Trimming & Embroidery. The district court, however, erred in two respects—first, in concluding that the entity is a partnership; and, second, in concluding that, since the contract was awarded to the partnership, the partners would be liable as individuals.

■ The Solicitation and Offer form submitted to the government by Daal in connection with the sweater contract clearly states that the offeror is Daal Trimming & Embroidery, Inc. That is a corporate entity, not a partnership. Furthermore, Daal Trimming & Embroidery is the name under which Daal transacts business. On May 12, 1980 Daal filed a Certificate of Assumed Name with the New York Department of State, Corporations and State Records Division. This showed Daal Trimming & Embroidery to be its assumed name. We are left with the definite and firm conviction that a mistake was committed when the court concluded that the contract was awarded to a partnership. Such conclusion was erroneous as a matter of law. *United States v. United States Gypsum Co.,* 333 U.S. 364 (1948).

■ The district court also erred in concluding that, since the government awarded the sweater contract to a partnership, the partners would be liable individually for Puma's commission. It was the contract between Daal and Puma, not the sweater contract, that created Daal's obligation to pay Puma a fee. That contract was entered into by Daal Associates, Inc., a corporation. Daal's corporate seal was affixed to that contract. It is beyond cavil that Puma knew it was contracting with a corporation. One who contracts with or otherwise deals with a body of persons as a corporation thereby admits that they are a corporation and is estopped to deny its incorporation in an action arising out of such contract. 8 Fletcher Cyclopedia of the Law of Private Corporations § 3910 (rev. ed. 1982); *see A.A. Sutain, Ltd. v. Montgomery Ward & Co.,* 22 A.D.2d 607, 610, 257 N.Y.S.2d 724, 727 (1st Dep't. 1965), *aff'd,* 17 N.Y.2d 776, 217 N.E.2d 674, 270 N.Y.S.2d 626 (1966); *Oceanic Insul-Lite Corp. v. Sullivan Dry Dock & Repair Corp.,* 191 Misc. 354, 356, 77 N.Y.S.2d 498, 500 (Sup.Ct., Kings Co., 1947).

■ Inasmuch as Daal is a corporation and not a partnership, Shamilzadeh and Conforti are not liable as individuals for Puma's commission. As we have stated, the law deals with a corporation as an entity distinct from its shareholders. *In re Gibraltor Amusements, Ltd.,* 291 F.2d 22, 24 (2 Cir.), *cert. denied,* 368 U.S. 925 (1961). Moreover, Shamilzadeh and Conforti cannot be held individually liable for a breach of contract since they acted in their capacities as officers. *Lubrication and Maintenance, Inc. v. Union Resources Company, Inc.,* 522 F.Supp. 1078, 1082 (S.D.N.Y. 1981). Courts will pierce the corporate veil when the corporation is used "to defeat public convenience, justify wrong, protect fraud, or defend crime." *Gibraltor, supra,* 291 F.2d at 24 (citations omitted). Otherwise, courts generally are reluctant, under New York law, to pierce the corporate veil. *Establissement Tomis v. Shearson Hayden Stone, Inc.,* 459 F.Supp. 1355, 1365 (S.D.N.Y.1978); *Merkel Assoc., Inc. v. Bellofram Corp.,* 437 F.Supp. 612, 617 (W.D.N.Y.1977); *Woodland Nursing Home Corp. v. Weinberger,* 411 F.Supp. 501, 505 (S.D.N.Y.1976). No valid reason to pierce the corporate veil has been demonstrated here.

For the reasons stated above, we reverse that portion of the judgment that holds Shamilzadeh and Conforti jointly and severally liable as individuals. We modify the judgment accordingly.

### IV.

To summarize:

We affirm that portion of the judgment that holds that the contract did not violate federal law and is not against public policy. We reverse that portion of the judgment that holds Shamilzadeh and Conforti jointly and severally liable. The judgment is modified accordingly and, as modified, it is affirmed.

As modified, affirmed.