Kevin P. **FURNARY**, Plaintiff–Appellee,

v.

Mike **MERRITT** and Jim Kelly, d/b/a Niwot Industries and d/b/a Gun Stuff, and Niwot Industries, Inc., a Colorado corporation, Defendants–Appellants.

No. 90CA1021.

Colorado Court of Appeals, Div. I.

Dec. 19, 1991.

As Modified on Denial of Rehearing April 23, 1992.

Certiorari Denied Oct. 13, 1992.

Sutton, Kennedy & Hensley, P.C., Walter J. Kennedy, Andrew Spiegel, Boulder, for plaintiff-appellee.

Martin & Mehaffy, Joel C. Maguire, Boulder, for defendants-appellants.

Opinion by Judge DUBOFSKY.

Defendants, Mike Merritt and Jim Kelly d/b/a Niwot Industries and d/b/a Gun Stuff, and Niwot Industries, Inc., appeal a judgment entered on a jury verdict awarding plaintiff, Kevin P. Furnary, $41,000 in damages for breach of contract. We affirm.

In 1983, Merritt and Kelly approached Furnary to obtain raw materials to construct a new type of nylon gun holster. Furnary, who had prior experience developing, selling, and manufacturing other products, was impressed with this product. In January 1984, he orally agreed to assist defendants in marketing the holster. Furnary testified that this oral agreement provided that he would receive 10 percent of the gross payments for those contracts with the Coast Guard for which he was responsible and 5 percent of the gross payments made from contracts with the military.

Furnary's brother-in-law was in the Coast Guard, and Furnary initially contacted him for assistance in selling the nylon holsters to the Coast Guard. His brother-in-law referred him to other individuals within the Coast Guard. During the next four years, plaintiff also attempted to market the holster with state, federal, and municipal agencies, as well as with at least one non-governmental commercial business.

Defendants received a sales order from the Coast Guard and Furnary was paid a 10 percent commission. However, Furnary received no commission payments from defendants for other Coast Guard sales. Furnary terminated his employment relationship with defendants in January 1988. He then sued defendants for failing to pay a 10 percent commission on a large sale of the gun holsters to the Coast Guard.

A jury awarded plaintiff $41,000 in damages and also answered special interrogatories bearing on whether, as required by 41 U.S.C. § 254(a) (1987), plaintiff was a "bona fide established commercial or selling agency maintained by the contractor for the purpose of securing business." Relying in large part on these answers, the trial court maintained that Furnary could recover his percentage of the sale between defendants and the Coast Guard.

## I.

Defendants argue that, under the circumstances here, 41 U.S.C. § 254(a) prohibits the payment of a contingent fee to Furnary. We conclude that the statute does not prevent recovery here. 41 U.S.C. § 254(a) states in relevant part:

Every contract awarded after using procedures other than sealed-bid procedures shall contain a suitable warranty ... that no person or selling agency has been employed or retained to solicit or secure such contract upon an agreement or

understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the contractor for the purpose of securing business,....

Historically, the courts have regarded the activities of persons who represent other individuals in order to obtain business with the government with some suspicion. *See Providence Tool Co. v. Norris,* 2 Wall 45, 69 U.S. 45, 17 L.Ed. 868 (1864). In *Hazelton v. Sheckells,* 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939 (1906), the court criticized the practice of individuals or companies receiving a contingent fee for finding government business for others.

The early court decisions interpreting the contingent fee limitation statute were very restrictive. *See, e.g., United States v. Paddock,* 178 F.2d 394 (5th Cir.1949). However, today, the United States government is one of the largest buyers and sellers of goods in the world and is very accustomed to dealing with a broad range of sellers, buyers, and agents, with a host of different production capacities and contractual arrangements. *See generally Economic Report of the President,* H.R. Doc. No. 102-2, 102d Cong., 1st Sess. 45 (1991).

Also, contingent fees are now widely used throughout our society and provide an opportunity for smaller companies to obtain business or to otherwise be successful in their line of work. *See generally* Richard M. Birnholz, *The Validity and Propriety of Contingent Fee Controls,* 37 UCLA L.Rev. 949 (1990); Michael D. Green, *Contingent Attorney Fees: Theory and Experience,* 62 Law Institute Journal 1182 (Dec. 1988).

These changes in the scope of the federal government's marketplace involvement and in the use of contingent fees have been factors in liberalizing the right of small companies or individuals acting as agents to have contingent contracts with sellers and not violate the law. *See Puma Industrial Consulting, Inc. v. Daal Associates,* 808 F.2d 982 (2d Cir.1987).

■ However, 41 U.S.C. § 254(a) does prohibit private parties from contracting for a sales commission from government contracts unless the agent procuring the contract is a "bona fide established commercial or selling agency maintained by the contractor for the purpose of securing business." The overall purpose of this provision is to prevent improper or undue influence by middlemen in affecting governmental decisions. *See Quinn v. Gulf & Western Corp.,* 644 F.2d 89 (2d Cir.1981).

In *Puma Industrial Consulting, Inc. v. Daal Associates, Inc., supra,* the court listed the important criteria which should be applied in determining whether a procuring agent falls within the scope of the statute such that the agent may recover a commission. The factors listed in *Puma* include: 1) whether the fees are commensurate with the nature and extent of services rendered by the agent and are not excessive as compared with those customarily allowed for similar services; 2) whether the entity had adequate knowledge of the contractor's products and business; 3) whether there has been a continuity in relationship between the parties; 4) whether the agency is an established concern; and 5) whether the agreement is confined to just obtaining government contracts.

■ As previously stated, the underlying purpose for the requirement of a "bona fide established commercial or selling agency" is to prevent improper influence peddling. The federal government has promulgated certain regulations, 48 C.F.R. § 3.408(2)(c) (1987), to provide direction in determining if the statutory prohibition of 41 U.S.C. § 254(a) has been violated. These regulatory criteria were an important basis for the *Puma* decision and also closely coincide with the interrogatories/criteria submitted to the jury here. However, these federal regulations are not separate and inviolable rules, but rather are to be applied collectively to determine whether, under all the circumstances, an agent has acted improperly. *See Puma Industrial Consulting, Inc. v. Daal Associates, Inc. supra.*

Here, the jury was provided interrogatories that covered the important criteria

which are generally used in determining if an agent has violated 41 U.S.C. § 254(a).

■ In evaluating the sufficiency of the evidence supporting a jury verdict, we must look at the evidence in the light most favorable to the prevailing party and give that party the benefit of all reasonable inferences from the evidence. *Schick v. Pritchard*, 89 Colo. 132, 299 P. 1061 (1931). After applying that standard here, we conclude there is adequate evidentiary support for the jury's determination in regard to its answers to the interrogatories and as to the overall verdict entered.

■ The evidence is very substantial that plaintiff met most of the pertinent criteria. Plaintiff had an exceptional knowledge of the product and, indeed, helped to modify and redesign it. Furthermore, there was a long ongoing relationship between the parties. There was also evidence that plaintiff had done similar marketing and design work in the past. Plaintiff made several trips to the East Coast in an effort to sell defendants' holsters. Also, he contacted local law enforcement units in order to sell the holsters to them, and he contacted a major gun manufacturer concerning the holster.

■ Here, as in *Puma Industrial Consulting, Inc. v. Daal Associates, Inc., supra*, there is no serious suggestion that the plaintiff used improper influence. Also, as in *Puma*, the plaintiff was involved in a small business enterprise. An overly restrictive interpretation of the statute and regulations in effect would prevent smaller sellers and agents from being able to do business with the federal government.

We note further that this is a lawsuit between private parties contesting the amount of money owed by one to the other. If the defendants had been successful here, the amount in dispute between the parties would have remained with them and would not have gone to the United States government. As determined by the jury, the defendants here agreed to a contingent fee contract with the plaintiff. When defendants formed the contract and thereafter, they apparently knew of the limitations on

such contracts under 41 U.S.C. § 254(a). Despite such knowledge, defendants voluntarily entered into a contract which they now maintain was illegal. For this reason, we are disinclined to construe 41 U.S.C. § 254(a) strictly against the plaintiff. *See Berkeley Metropolitan District v. Poland*, 705 P.2d 1004 (Colo.App.1985).

Accordingly, we conclude that the statute does not bar plaintiff from recovering a commission from defendants.

## II.

Defendants also argue that the trial court erred in excluding their proposed interrogatories to the jury and including others.

■ The submission of interrogatories to the jury is within the discretion of the trial court, and absent an abuse of that discretion, its decision on such issue will not be disturbed on appeal. *Lambrecht v. Archibald*, 119 Colo. 356, 203 P.2d 897 (1949).

■ Here, the trial court submitted 10 interrogatories which essentially encompassed the critical factors set forth in 48 C.F.R. § 3.408(2)(c) and *Puma Industrial Consulting, Inc. v. Daal Associates, Inc., supra*. The jury's answers to these interrogatories were in plaintiff's favor, and these findings were adopted by the trial court. *See McKelvy v. Cooper*, 165 Colo. 102, 437 P.2d 346 (1968).

We conclude that the interrogatories and other instructions submitted by the trial court accurately stated the law and that it, therefore, did not err in refusing to submit defendants' interrogatories. *See Modern Woodmen of America v. White*, 70 Colo. 207, 199 P. 965 (1921); *Green v. Pickett*, 492 P.2d 884 (Colo.App.1971) (not selected for official publication).

## III.

Defendants next argue that the trial court erred in refusing their tendered instructions regarding the formation of a contract and in giving an instruction that the jury could find a binding contract even

if there was no agreement on the essential terms.

■ The trial court may properly refuse a tendered instruction if other instructions adequately cover the subject. *National Surety Corp. v. Citizens State Bank,* 734 P.2d 663 (Colo.App.1986).

■ The parties agree that an oral contract was made to market the holsters. The dispute centered around the duration of the contract and the percentage of commission to be paid. It was for the jury to determine, as a question of fact, the terms agreed to by the parties. *Real Equity Diversification, Inc. v. Coville,* 744 P.2d 756 (Colo.App.1987).

Defendants' proposed instruction was to allow the jury to conclude that no agreement had been reached in regard to essential elements of the contract and that, thus, no contract existed.

We disagree that the trial court erred in not submitting this instruction to the jury.

Throughout the lawsuit, both parties essentially agreed that there was a contract and only disagreed on the amount that was owed and whether the contract itself violated 41 U.S.C. § 254(a). Furthermore, the courts have held that, in a service situation in which an express contract does not exist and the amount owed to the party providing the services is disputed or uncertain, an implied contract in which there is compensation in a reasonable amount will be found. *See generally* 66 Am.Jur.2d *Restitution and Implied Contracts* §§ 20, 21 (1973).

■ Here, in essence, defendants' tendered instruction erroneously informed the jury that, if the parties had not agreed upon a compensatory amount, then no contract existed and compensation was unnecessary. Since at issue here was an agreement to provide personal services, the fact that a compensatory amount may have been disputed or uncertain did not prevent an implied contract from arising among these parties. Since defendants' tendered instruction failed to inform the jury in regard to implied contracts and reasonable compensation thereunder, it was erroneous

and should not have been given. *See Billings v. Boercker,* 648 P.2d 172 (Colo.App. 1982); *Redd v. L & A Contracting Co.,* 246 Miss. 548, 151 So.2d 205 (1963); *Cramer v. Clark,* 121 Wash. 507, 209 P. 688 (1922).

■ Even if we were to assume that this instruction correctly stated the issue concerning the existence of an agreement, since defendants failed to accompany it with a damage instruction indicating that plaintiff was entitled, under a *quantum meruit* theory, to compensation, it would remain improper. *See People v. King,* 648 P.2d 173 (Colo.1982).

We conclude that since the instructions here adequately stated the law and since defendants' instruction was erroneous, the trial court's refusal to submit defendants' instruction was not error. *Modern Woodmen of America v. White, supra; Green v. Pickett, supra.*

The other contentions of the defendants are without merit.

Judgment affirmed.

PIERCE and RULAND, JJ., concur.