# No. 12,430.

## KITTS, ADMINISTRATRIX *v.* HILL.
### (300 Pac. 610)

Decided June 8, 1931.

Mr. L. C. Brodbeck, for plaintiff in error.

Mr. Walter E. Bliss, Mr. E. T. Snyder, for defendant in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

This action by Mollie E. Kitts, as the administratrix of the estate of her deceased husband, Jesse E. Kitts, against the defendant Hill, is to recover judgment on his promissory note to Jesse E. Kitts as payee, in the principal sum of $2,000. The defense in the answer in legal effect is payment, and the case upon a second trial to a jury was submitted upon that issue without objection. A verdict was rendered in favor of the plaintiff for a portion of the amount claimed to be due. The defendant filed a motion for a new trial upon the ground that the

uncontradicted evidence in the case clearly established payment. The trial court sustained this motion, set aside the verdict and granted a new trial, to which ruling the plaintiff excepted. Thereupon the record discloses the following:

"The plaintiff, by her counsel, wishes to state to the Court that since the Court is of the opinion the defendant's motion for a new trial should be allowed, and that the evidence is insufficient under the law, and that the plaintiff having tried this case twice, and having been awarded a verdict in her favor each time, and being unable to present and prove any better case than she has already made, plaintiff now elects to stand by her case, as it is now made, so that the necessity of another hearing may be avoided, and that the case as now made and as it now stands, may be reviewed in the Supreme Court, now asks that a final order of dismissal of said case be entered, in order that she may avail herself of that review by the Supreme Court.

"The Court: The plaintiff having elected to stand on her case as presented, and to have this case reviewed by the Supreme Court, it is therefore ordered that this cause be dismissed as of this date.

"To which ruling the plaintiff by her counsel, then and there excepted, as well as to the Court's granting the defendant's motion for a new trial."

Though the record is silent as to the attitude of the defendant concerning this unusual procedure when it was suggested by plaintiff's counsel to the trial court, it is apparent that both parties must have considered the pending writ of error as one for a review of a final judgment of the district court based upon findings made by the trial judge, sitting as a trier of facts, with the approval of the parties themselves, and that the findings were made at plaintiff's request upon the same evidence that was produced at the second trial before a jury. This is the most favorable view that can be taken of plaintiff's right to any review at all by this court on the

record now before us. It is only upon the assumption that this writ of error is to such final judgment of the district court on a third trial based upon findings of fact by the judge as trier of facts and upon the evidence which was produced at the second trial that our authority on this review can be upheld. If this conclusion is not sound, then plaintiff has no right whatever to be heard here upon this record. We are not now reviewing a judgment against plaintiff that was entered by the trial court on the second trial of the action and based upon the verdict there rendered in her favor; for that verdict has been set aside on the defendant's motion and could not be the basis of any judgment. The further proceeding below, if it culminated in a judgment at all, was, in effect, a third trial of the action upon the evidence produced at the second trial and the trier of the facts was not a jury, but the presiding judge, and the judgment of the court was based upon the judge's own findings of fact.

■ We are of the opinion that the trial judge reached a correct conclusion upon his findings upon the evidence produced and in the judgment rendered in defendant's favor. The controlling facts, as testified to by disinterested witnesses for defendant, and they are not contradicted, are as follows: Jesse E. Kitts for some time was cashier and the sole manager of the First National Bank of Mead, Colorado. He owned 58 shares of its capital stock. He was a dealer in livestock, buying, feeding and selling the same. He desired to sell his bank stock and to retire from the banking business so that he might have more time to devote to his stock interests. The other shareholders were willing to have Kitts withdraw and desired to have some other person as cashier who would be willing to purchase the stock held by Kitts and to take active charge of the bank. To this end W. E. Letford, one of the directors, solicited the defendant Hill as a prospective purchaser and asked him to come to the bank for an interview with Kitts. He did so and at the first interview a tentative agreement, afterwards con-

summated, was made between Kitts and Hill whereby the latter was to purchase from Kitts his stock at the actual book value thereof, which was to be determined by Letford after making an examination of the books as to the assets and liabilities of the bank. Letford proceeded, in the presence of both Kitts and Hill, to examine the bank books to make this ascertainment, and inquired of Kitts as to the various securities and items of importance as he came to them in the examination, and determined from the data thus furnished by Kitts and by the records of the bank, as kept by Kitts, that the stock was worth $150 a share, and the defendant purchased the same from Kitts at that price and paid in cash $6,700, and for the balance of the purchase price gave to Kitts his promissory note for $2,000, which is the note sued upon by the administratrix in this action.

The defendant took charge of the bank in December, 1920. Soon thereafter he discovered discrepancies and irregularities in the books of the bank and that the chattel mortgages owned by the bank as part of its assets were padded so that the security for the loans to the mortgagors was insufficient. Defendant further discovered among the bank's certificates of time deposits one for $25,000 which the books of the bank showed bore 4 per cent interest, which in fact carried interest at the rate of 7 per cent per annum, and that the entry in the books had been so changed by Kitts between the 5th day of December and the 15th day of the same month and before Hill bought the stock. Kitts informed Letford and Hill at the time the examination was being made that this deposit would be renewed on its due date. The holder of the certificate, however, presented the same for payment to the bank a few days after the defendant took charge and it was paid. On its face the certificate called for interest at the rate of 7 per cent per annum, instead of 4 per cent which the false entry made by Kitts in the books of the bank showed. Hill also discovered that Kitts, after the bank had received 8 or 10 mortgages as

security for loans made to the respective mortgagors, wrote into them, without the consent or knowledge of the mortgagors, additional items of property. Because of the discovery of these and other irregularities and improper conduct on the part of Kitts, a dispute arose between him and defendant as to the sale of the bank stock. Several meetings of the individuals who were the directors of the bank were called, at which Kitts and Hill were present, for the purpose of an amicable settlement of the dispute between them as to the alleged fraudulent conduct of Kitts, who admitted the irregularities and alterations. He was indebted to the bank by virtue of loans which as cashier he had made to himself and his partner, who were engaged in the stock business, to the amount of about $12,000, which was secured by chattel mortgage upon sheep which were being fed by this copartnership on a farm near Mead. At these meetings Kitts, after his admission of the wrongs that he had perpetrated and the misrepresentations he had made to Hill at the time Hill purchased the stock, stated that his reason for padding the mortgages was that he wanted to get them by the state bank examiner and make them eligible for rediscount by the Federal Reserve Bank. The $2,000 note, which is in suit here, had theretofore been endorsed to the bank by Kitts as collateral security for the payment of the indebtedness of Kitts and Alder to the bank. In the presence of these stockholders and directors of the bank this controversy between Kitts and Hill was fully considered and Kitts admitted that he had defrauded Hill in that he had received payment for the stock in the amount that it was estimated to be worth if the chattel mortgages had not been padded and the other wrongful doings of Kitts when he was cashier had not been perpetrated. Kitts thereupon said that he would like to reimburse Hill for the loss which he had caused him as the result of his purchase of this stock, but the only thing he had which he could turn over was the equity in the $2,000 note here in suit, and if Hill would settle the controversy

between them for that consideration, he would make the settlement. Hill accepted the offer and Kitts then directed the bank to turn over to Hill this $2,000 note which it held as collateral, as soon as the full indebtedness of Kitts and Alder to the bank was paid. The note was thereafter continuously held as collateral security and never came into possession of Kitts. After this settlement was made the bank advanced additional money to Kitts for the expense of feeding the sheep of Kitts and Alder upon which it held chattel mortgages, and the bank so continued to hold the Hill note as collateral for the aggregate Kitts and Alder indebtedness.

Kitts met an accidental death August 1, 1922, and about two weeks later Hill paid to the bank a total sum of $1,367, balance due the bank from Kitts and Alder, and when he made such payment Letford, as executive officer of the bank, pursuant to instructions which he had received from Kitts, delivered to Hill his pledged note. After Mrs. Kitts was appointed as administratrix of her husband's estate she was informed that the bank was in possession of this note and she brought an action against the bank to recover possession of the same. Since the plaintiff brought the suit as the administratrix of an estate, upon the advice of the bank's attorney that no officer or stockholder of the bank was competent to testify in a court proceeding as to the real facts concerning this note and that plaintiff would or might recover judgment, the bank's attorney requested Hill to deliver the note to him so he might give it to plaintiff, whereupon Hill gave the note to the attorney, who in open court delivered the same to the plaintiff's attorney and the case was dismissed by the court. Thereafter plaintiff started the pending action against the defendant. At the first trial, as already stated, the jury returned a verdict for a portion of the note, which the court set aside and granted a new trial. Upon the second trial the verdict for plaintiff also was set aside.

Upon the foregoing statement of facts we are

asked by plaintiff to set aside the adverse judgment against her rendered on the third trial. As plaintiff by her attorney on this trial submitted her case to the trial judge for a decision upon the evidence produced at the second trial, and asked for his judgment, we do not see how there can be a reversal. The same judge who presided at the first trial presided at the second trial, which was before a jury. He saw and heard the witnesses as they testified. We cannot set aside the findings of the judge on the merits because of the alleged insufficiency of the evidence, sustained as they are by uncontradicted evidence of apparently respectable witnesses. There is no evidence in the record that tends to impeach them. There is nothing improbable in their testimony on its face and there is no contradiction thereof by any witness who testified or by any record evidence. A case quite in point is Chesapeake & Ohio Ry. Co. v. Martin, decided by U. S. Supreme Court, October Term, 1930, 51 Sup. Ct. 453.

■ The plaintiff herself was her only witness at the trial and her testimony chiefly bore upon the capacity in which she sued, how she discovered the existence of the note in suit, her recovery of its possession from the Mead bank, and other formal matters about which there is no controversy. The defendant could not, over plaintiff's objection, be heard as to any matters in dispute occurring during the lifetime of Kitts, but only, if at all, as to facts occurring after his death. Section 6556, C. L. 1921. Although Hill testified at the trial, his testimony was restricted to what occurred after Kitts died. Probably the shorter and better way to dispose of this case is to consider briefly as we may the assignments of error which are argued for plaintiff in error.

■ The discussion by counsel for plaintiff is largely inappropriate because it is inapplicable to the case as made by the evidence. He relies in part upon section 5344, C. L. 1921, which, among other things, prohibits the foreclosure of any security constituting a lien or incumbrance

upon any property owned by a deceased person at the date of his death, otherwise than by suit or by consent of the county court. There are several answers to plaintiff's argument. This is not an action by a security holder to foreclose anything; it is an action by the holder of a promissory note to recover a judgment thereon, which note had theretofore been pledged to the Mead bank as collateral security for a debt which the payee owed the bank. If the plea of payment by the defendant maker converts the plaintiff's action into a foreclosure suit, she, herself, could not recover in any event according to the argument of her counsel. Moreover, if the defendant's answer has changed this action from a suit on a promissory note against the maker into a foreclosure suit by the defendant, then this statute does not apply because such foreclosure in question is by suit and the statute expressly authorizes the same.

■ Plaintiff says that the witnesses for the defendant who testified to facts, which if true, constitute payment, are not competent to testify because they are directly interested in the event of the suit, citing section 6556, C. L. 1921. This section disqualifies them if the bank is, or the directors are, directly interested. We have read the transcript of the record of the second trial and it contains no evidence whatever that either the bank or its directors have any interest, direct or indirect, in the event of the suit. To the contrary, the evidence clearly shows that Kitts at one time owed the bank money which was paid in full before this suit was brought and the witnesses for the defendant who testified here were not in any respect interested in the result. None of the cases cited by plaintiff in support of this assignment has any bearing upon the facts of this case. Neither the bank nor the individual directors gain or lose anything, whatever the result of the suit would be.

■ Another objection argued is, since section 3939, C. L. 1921, provides that renunciation or release of the whole or any part of a promissory note must be in writ-

ing unless the note is delivered to the person primarily liable thereupon, the defense to this action fails because the evidence shows that release of the balance due on the Hill note was not in writing, nor was the note delivered to him. The answer to this contention is that the note itself was actually delivered to Hill by the agent authorized by Kitts to deliver it.

■ The plaintiff further says that the trial judge admitted the testimony of incompetent witnesses. It is true that as regards the fixed terms of a promissory note, extrinsic agreement cannot be availed of to avoid an enforcement upon the ground that parol evidence, prior to or contemporaneous with the writing, is merged therein. If that rule has any application to this case, we have discovered nothing in the record upon which the contention can be based.

■■ The alleged errors in the instructions which the court gave to the jury on the second trial are not before us for consideration. The trial court upon the third and final hearing which is now before us for review, was not obliged to give written instructions to himself as to the law of the case, and did not do so. We must presume, and rightly so, because there is nothing in the record to the contrary, that the trial judge decided the case in the defendant's favor upon the ground that it was supported by the evidence, which required a judgment for the defendant on the facts themselves. In other words, the principles of law which are invoked by the plaintiff here for a reversal of the judgment, have no application to the case as made by the uncontradicted evidence. The vigorous criticism, in which plaintiff's counsel indulges, of the alleged flagrantly erroneous invasions of the province and functions of the jury by the trial judge, is wholly inapplicable to the facts. Indeed, the court, had the defendant made a request therefor, would probably have instructed the jury at the close of the second trial to return a verdict for the defendant. When the case, therefore, was submitted to the court on

the third trial upon the evidence which was produced at the second trial, the trial judge properly concluded that the plaintiff had wholly failed in her evidence and that the uncontradicted evidence required that there should be no judgment against the defendant, and, therefore, found for the defendant and dismissed the action.

The judgment is affirmed.