No. 14,144.

ESTATE OF STEPP.

STEPP *v.* STEPP.
(75 P. [2d] 146)

Decided December 20, 1937.

Messrs. BARTELS, BLOOD & BANCROFT, Mr. ARTHUR H. Laws, for plaintiff in error.

Mr. JOSEPH H. ROSS, Mr. FRANK L. HAYS, for defendant in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

SUIT on a claim by William G. Stepp against the estate of his mother, Missouri A. E. Stepp, for services as "nurse, attendant, and housekeeper," from February 6, 1919, to April 3, 1935, at $15 a month, or a total amount of $2,880. Judgment in the county court was for the claimant in the full amount. Upon appeal to the district court, the judgment was reduced to $1,664, the district court finding that the claimant was not entitled to any compensation for services as nurse or housekeeper. To this latter judgment against the estate, plaintiff in error, the executor, another son, assigns error and asks that the judgment be reversed and the claim dismissed.

By her will, the said Missouri A. E. Stepp provided that her estate should go to her twelve living children, *share and share alike,* the estate being worth approximately $6,500.

Prior to 1918, the deceased was living on a farm in Jefferson county with her son, William G. Stepp, under an arrangement, whereby William furnished most of the machinery and equipment and did the farm work in return for his support and a share of the crop. About that time, Mrs. Stepp, realizing that she was advancing in years and wishing to take life easier, sold the farm to Mr. and Mrs. George Harkness, and moved to Denver, where she resided until her death in 1934, her son William, the claimant, being with her during all of said time, helping her with the housework and doing odd chores about the house, such as bringing in wood, taking care of the lawn, and serving generally as helper and companion.

Claimant was the only one of the children not married. There was no written agreement between him and his mother, but in support of his claim he relies on several conversations heard by certain of the witnesses, particularly the Harknesses, his brother, Charles Stepp, and several of the neighbors.

Charles Stepp testified that in 1924, in the presence of his wife and William, his mother stated, "That some of her children had objected to Bill staying there, but she wanted to retain him because it gave her a chance to maintain a home; and that all he got was his board and room * * * and he should have something for his time, and that after she was gone if they made any trouble over a settlement, that he could put in a claim for wages and get it out of the estate." Witness further stated that, between 1924 and the time of his mother's death, she had made the same statement half a dozen times or more.

Both Mr. and Mrs. Harkness testified that while negotiations were pending for the purchase by them of the Jefferson county farm, that Mrs. Stepp told them she wanted Will to come to Denver and make his home with her and help her, and that if he would do so that she would "make it right with Will if he came to town and

not go to his own farm." Several of her neighbors testified to the same effect.

This entire matter hinges on whether the claimant's witnesses are incompetent under certain provisions of section 2, chapter 177, volume 4, '35 C. S. A. (6556 C. L. 1921), reading in part as follows:

"No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion, or in his own behalf, by virtue of the foregoing section, when any adverse party sues or defends as the trustee or conservator of an idiot, lunatic or distracted person, or as the executor or administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee; unless when called as a witness by such adverse party so suing or defending, and also, except in the following cases, namely: * * * Sixth—In any such action, suit or proceeding, any adverse party or parties in interest may testify as to any conversation or admission, or as to all matters and things connected with the subject matter of said action, suit or proceeding, and which conversation and admission and matters and things aforesaid, occurred before the death and in the presence of such deceased and also in the presence of any member of the family of such deceased person over the age of sixteen years, or in the presence of any heir, legatee or devisee of such deceased person over the age of sixteen years; provided, however, that such member of the family, heir, legatee or devisee as the case may be, is present at the hearing of said action, suit or proceeding, or whose testimony is or may be procurable at such trial."

The plaintiff in error in his assignments, relies on four propositions: (1) That the witness, Charles Stepp, a brother, was incompetent to testify under the above quoted statute; (2) that the witnesses Harkness and the neighbors were likewise incompetent; (3) that the claim was stale; (4) that the services rendered were a gratuity.

1. Was the witness Charles Stepp an adverse party, and, therefore, competent within the meaning of the exception contained in paragraph "Sixth" just quoted? We say he was. An adverse party has been defined to mean "any person whose personal or property or other rights may be adversely affected by the operation of the judgment * * *''. 2 C. J. S. 505. Here the record clearly shows that the property rights of the witness, Charles Stepp, are adversely affected by the judgment. If the judgment is sustained, he takes less as an heir.

Plaintiff in error relies on the decision in *Norris v. Bradshaw*, 92 Colo. 34, 18 P. (2d) 467, a case somewhat similar to the one at bar, in which we held that the principal witnesses were disqualified and, therefore, the judgment below was reversed; but Mr. Justice Butler points out at page 41, "Mrs. Bradshaw, however, had no interest in preserving the assets of the estate, * * * She had a direct pecuniary interest hostile to the estate; namely, an interest in establishing the claim of herself and her husband to the property in question." There is absolutely no showing in the instant case that the witness Charles Stepp had any such interest, hence there is no offending circumstance such as that described in the Norris case.

2. There is no merit in the contention of plaintiff in error that the Harknesses and the other neighbors who testified in behalf of the claimant, were disqualified. Section 1, chapter 177, supra, provides inter alia: "All persons, without exception, other than those specified in sections 2, 3, 4, 5, 8, 9 and 10 of this chapter, may be witnesses." Section 2, particularly, has no application as to witnesses who have no interest in the result of the litigation. *Kitts, admrx. v. Hill*, 89 Colo. 186, 300 Pac. 610.

Having thus decided that the witnesses were not disqualified to testify, we think the further requirement of strict proof in cases of this kind has been met, particu-

larly in view of the fact that both trial courts believed the witnesses. The story told is consonant with domestic situations of this character, where one child in a large family remains unmarried and takes care of his aging parents.

3. There is no merit in the argument that this was a stale claim. It did not mature until the death of Mrs. Stepp, and was filed against her estate within the time allowed.

4. As to whether all of the services were a gratuity, or whether the claim, failing in part, should be denied in toto, were questions of fact to be determined by the trial court, and there was sufficient competent testimony to support its finding thereon. *Mitchell v. Sheets,* 92 Colo. 439, 21 P. (2d) 714.

The judgment for $1,664 in favor of the claimant, as found by the district court, is accordingly affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE HOLLAND concur.